## JOHNSON *v.* MASSACHUSETTS.

No. 702. Argued March 6–7, 1968.—Decided April 1, 1968.

*John M. Harrington, Jr.,* argued the cause for petitioner. With him on the briefs was *John A. Pike.*

*Brian E. Concannon,* Special Assistant Attorney General of Massachusetts, argued the cause for respondent. With him on the brief were *Elliot L. Richardson,* Attorney General, *John M. Finn,* Deputy Assistant Attorney General, and *Howard M. Miller,* Assistant Attorney General.

PER CURIAM.

In 1964 petitioner was tried and convicted in a Massachusetts Superior Court for murder, armed robbery, and other offenses. The conviction was affirmed by the Supreme Judicial Court of Massachusetts. *Commonwealth* v. *Johnson,* 352 Mass. 311, 225 N. E. 2d 360. We granted certiorari because there appeared to be substantial questions concerning the voluntariness of a confession of petitioner which was admitted in evidence at his trial. After oral argument and study of the record, we have reached the conclusion that the record relevant to the constitutional claims now asserted is insufficient to permit decision of those claims.* The writ is there-

---

*Petitioner's claim on *voir dire* was that his confession was beaten out of him by police. The trial judge found as a fact that it was not. At the trial itself petitioner did not attack the voluntariness

fore dismissed as improvidently granted. Cf. *Smith* v. *Mississippi*, 373 U. S. 238; *Massachusetts* v. *Painten*, 389 U. S. 560.

*It is so ordered.*

MR. JUSTICE MARSHALL, with whom THE CHIEF JUSTICE and MR. JUSTICE FORTAS join, dissenting.

Petitioner was convicted of the first-degree murder of a police officer and sentenced to death. He urges that an involuntary confession was used in evidence against him, in violation of due process.

The facts concerning the making of the statement are not in controversy. After the shooting of the police officer in the evening of August 1, 1963, petitioner drove off in a car. He was seen by other police officers who had been called to the scene by a police alarm and who proceeded to pursue him in their car. After a chase at high speeds for several blocks, during the course of which petitioner's automobile struck a wall and caromed off several parked cars, petitioner crashed into a bus. He limped away from the heavily damaged car in an attempt to flee but was almost immediately apprehended by the police.

Petitioner was taken to a police station and booked at 9:35 p. m. He was first placed in a cell and then taken to police headquarters sometime after 10:15 p. m. Between midnight and 5 a. m. he was placed in a lineup

---

of the confession on any other ground, or raise the other constitutional challenges argued in this Court. The defense at the trial was primarily directed at persuading the jury not to impose the death penalty. The petitioner made an unsworn statement to the jury at the close of summations in which he said, "all the evidence which the prosecutor presented to you was true. There was no sense in my taking the stand because all the evidence points to me. . . . All that I ask is just clemency . . . . I put my life into your hands. Please recommend clemency, life imprisonment."

for identification purposes upon four separate occasions. During this period petitioner was constantly surrounded by large numbers of policemen.  Various police witnesses estimated the number of officers present in the lineup room alone at from 45 to 100, and at least 32 officers testified at the hearing on the new trial motion to having had some contact with petitioner during the course of the night.  Numerous witnesses identified petitioner as the killer during the four lineups, although he continually maintained his innocence in the face of their accusations. Apart from the lineups, petitioner was also questioned intermittently during this period.  At about 5:50 a. m., August 2, petitioner began to give the inculpatory statements, in response to police questions, that were introduced against him.  It is clear that the interrogation of petitioner was carried on for the sole purpose of eliciting incriminating statements from him, since he had already been positively identified numerous times, while in lineups, as the killer.

Petitioner has a sixth-grade education and an I. Q. of 86.  During the period of over eight hours in which he was in police custody prior to confessing, he was at no time advised of his right to remain silent or his right to consult with an attorney, and the trial judge found as a fact that petitioner was not aware of his rights at the time he confessed.  At the time of his arrest petitioner was bleeding from a cut an inch or an inch and one-half long on the side of his head.  During the various lineups to which he was subjected, petitioner constantly had blood visible on his face or head.  Two doctors later examined petitioner, one on August 10, and the other on August 14.  They reported the following: "He [petitioner] has headaches and dizziness when he bends down and gets up.  He had a blackout spell in the police station.  Things appear blurry to him.  He has vomited a couple of times."  Two weeks after his arrest and con-

fession, petitioner underwent a brain operation for a subdural hematoma; the surgeon who operated on him testified that the hematoma "could have been there anywhere from one to two weeks."

On these facts the trial court found petitioner's confession voluntary, that is the result of his "free choice to admit, to deny, or to refuse to answer." *Lisenba* v. *California,* 314 U. S. 219, 241 (1941). While it is true that some of this Court's earlier decisions in voluntariness cases (relied on by the State here) are not inconsistent with such a holding, *e. g., Lisenba* v. *California, supra; Gallegos* v. *Nebraska,* 342 U. S. 55 (1951); *Stein* v. *New York,* 346 U. S. 156 (1953), I had thought that more recent decisions of this Court would have made it abundantly clear that a confession obtained under the circumstances present here would be involuntary and constitutionally inadmissible against its maker. See, *e. g., Culombe* v. *Connecticut,* 367 U. S. 568 (1961); *Haynes* v. *Washington,* 373 U. S. 503 (1963); *Davis* v. *North Carolina,* 384 U. S. 737 (1966); *Clewis* v. *Texas,* 386 U. S. 707 (1967).

The Court says that it finds the record in this capital case too "insufficient" to permit a resolution of petitioner's constitutional claim. I am unable to agree, since the evidence on the question of voluntariness is largely undisputed. I am particularly unable to understand the Court's disposition of this case, after full oral argument, in light of its disposition of *Greenwald* v. *Wisconsin, post,* p. 519, in which it finds a confession involuntary and reverses, without argument, on facts which are, if anything, less compelling on the issue of involuntariness than the facts in the present case.

To be sure, petitioner challenged the voluntariness of his confession at trial only on the theory, which was rejected, that he had been subjected to physical abuse by the police. However, in the course of the hearing

on that challenge the circumstances as outlined above emerged from the testimony of the police and were specifically found as facts by the trial judge. Yet, once he concluded there had been no physical abuse, the trial judge did not go on to consider the voluntariness of petitioner's confession in light of "the totality of the circumstances," *Greenwald* v. *Wisconsin, supra,* at 521, under which it was obtained. While the Supreme Judicial Court stated that petitioner should have raised at trial the theory of involuntariness on which he now relies, its opinion reveals that it then went on to pass on that evidence itself, in the course of ruling on petitioner's request for a new trial, and found the confession voluntary. Accordingly, I do not feel that it is necessary for us to decide whether the trial judge was under a duty *sua sponte* to consider a theory of involuntariness not initially raised by petitioner, since it appears that such facts were considered and passed on in the course of appellate review in the state court.

I respectfully dissent.