**STATE of Iowa, Appellee,**

**v.**

**George (N.) HYDE, Appellant.**

**No. 52589.**

Supreme Court of Iowa.

April 9, 1968.

Gene L. Needles, Des Moines, for appellant.

Richard Turner, Atty. Gen., David A. Elderkin, Asst. Atty. Gen., and Raymond A. Fenton, Des Moines, County Atty., for appellee.

BECKER, Justice.

Defendant was indicted for assault with intent to commit rape, tried before a jury and convicted. Upon appeal he assigns five errors. We affirm.

The State's principal witness was Marilyn Lindholm, a public health nurse, who had been helping a Mrs. Harris. Defendant had been living at Mrs. Harris' home. On December 2, 1966, he called Miss Lindholm, and told her that Mrs. Harris had returned to the hospital leaving a gift of $10 for her. The nurse said she couldn't accept the money but would call him back.

Later in the day when the nurse was in the vicinity of the Harris residence, she stopped and knocked for some time before defendant answered the door. While she was explaining that she couldn't accept the gift defendant pulled her into the house. Defendant had a knife which Miss Lindholm grabbed. She was wearing gloves and was not cut by the knife.

Miss Lindholm described her struggles with defendant which included defendant trying to force her down on the bed, striking her on the face, stroking her on the face, touching her legs and saying "I just want—something." During this melee Miss Lindholm tried to talk to defendant. When she said her face hurt and she wanted ice, defendant got up and went to the kitchen. She kept talking. The phone rang and defendant answered it. Miss Lindholm tried to get out the door but defendant stopped her. She still kept talking and the phone rang again. This time she picked it up and said: "Hello, Get the police." When defendant took the phone Miss Lindholm ran out of the house. A motorist nearby took her to the police station. She reported the incident to the police and was taken to the hospital. Examination revealed a dislocated shoulder, facial cuts and bruises and a cut on the left corner of her mouth that required three stitches. During the time they were on the floor and on the bed defendant was on top of her, but, as she said "He never got me completely down."

Miss Lindholm was corroborated by the doctor and by Mr. Zeller, the person who made the two phone calls. He had called back because defendant was so abrupt. The second time he heard screaming and scuffling in the background and the woman's plea that he call the police. He did so.

The police responded to the call and found defendant alone. Defendant told them there was no trouble and allowed them to look around. They returned a short time later and arrested him.

Defendant took the stand. He agreed that he called Mrs. Harris' nurse to give her something because she had been good to Mrs. Harris. He was down in the basement scraping paint with a putty knife when she came to the door. He still had the putty knife in his hand when he answered the door. Defendant stated the nurse came into the house of her own accord. They got into an argument about whether Mrs. Harris should be in a nursing home. Miss Lindholm raised her purse and he didn't know if she was going to hit him. He raised his arm and accidently struck her and she started to scream. He took her arm and told her he wasn't going to hurt her. She backed over to the bed and sat down. She saw the putty knife and reached for it. He took it out of her hand and laid it on the table. She asked for ice and they went into the kitchen. The phone rang, he answered it and told the insurance man to come back tomorrow. It rang again and she asked who it was. He told her it was the insurance man. She asked to talk to him and then asked for the police. He denied intent to hit the woman, said he hit her only once and that time accidently. He denied intending to hurt her or rape her.

Defendant was taken to the police station and questioned by officers James Thompson and Forrest Speck. He filed a motion to suppress evidence of statements made to the officers alleging that although the officers state defendant was informed of his constitutional rights he was unable to make an intelligent and effectual waiver of his rights because he had only a fourth grade education, could not read well enough to understand a newspaper or the minutes of the indictment, and he was not advised of

his constitutional rights until his appearance before the court after the elicitation of the admissions referred to in the minutes of evidence.

At the hearing on the motion defendant testified first. He said Officer Thompson got him out of jail and asked him why he hit the nurse. Another officer was present. Neither told him of his right to an attorney or that what he said would be held against him. He did not understand about self-incrimination and as to an attorney the judge appoints one for you if you don't have the money to hire one. The judge first told him of his right to an attorney. He denied telling the detectives he did not want a lawyer.

Detective Thompson teestified to taking Mr. Hyde from his cell to an ante room. He told Mr. Hyde he had a right to an attorney, he didn't have to tell them anything about the incident if he didn't want to, he was told if he didn't have the money for an attorney the court would get him one. The officer said defendant was given these warnings several times as he told different stories. Each time defendant said he would just as well tell them about it.

Detective Speck testified to substantially similar facts at the hearing on motion to suppress. He said the entire questioning of Mr. Hyde took about 45 minutes.

The ruling on the motion to dismiss was oral. It concluded: "While the accused has indicated his educational background is limited, at the same time he does indicate an understanding of his right to counsel.

"Now, the Court is aware of the fact that the burden is upon the State to furnish the basis for the waiver of any constitutional right against self-incrimination, but the Court feels in considering all the facts as disclosed here by testimony that the State has met the burden in this instance and that there is sufficient evidence of the giving of the warnings and explanation of the rights and waiver of the privilege against self-incrimination so that the evidence as to statements made by the accused at the time referred to by the officers, would be admissible *insofar as the grounds thus far urged to suppress the same are concerned.*" [emphasis supplied]

At trial before a different judge the officers testified (over objection) to information elicited from defendant. The objections went to the same points and were overruled with similar comments by the trial judge.

The officers said defendant told several stories. They told him they didn't believe his stories because they had other facts from their investigation. He then told substantially the same facts related by Miss Lindholm and said he intended to rape her. At the time of interrogation the officers had not talked to Miss Lindholm.

I. Defendant contends the confession was not shown to be voluntary. The sole circumstance put forward to support the argument is the officers' rejection of defendant's first story and their statement to him that it did not square with their knowledge from independent investigation. Defendant reasons that since the officers had not talked personally to the complaining witness they misled defendant by such a statement. The officers did not say what their investigation showed. Nor did they indicate the source of any other information they might have had. Such information could, of course, have come from other members of the police force. There is no showing the officers made false statements and defendant does not claim they did. Nor does he claim coercion by physical abuse, long continued interrogation or trickery. This case does not fairly fall within any of the procedures adversely noted in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

■ State v. Clough, Iowa, 147 N.W.2d 847, 850, "Before admissions or confessions may be admitted in evidence as voluntary, pursuant to custodial interrogation, we have said it must appear the interrogation was

free from coercion or mistreatment of the defendant, that the statements were given without threats or promises. State v. Mullin, 249 Iowa 10, 14, 85 N.W.2d 598, and citations." The record fairly complies with that standard.

The evidence of defendant as well as that of the State indicates an acceptable interrogation after defendant was warned of his rights. There is little or no evidence to support the charge that the statements were in fact involuntary.

■ II. Defendant's next point is that while the court ruled that the Miranda warnings had been given, it did not rule on the voluntariness of the statements. He urges this failure as reversible error on the grounds that a finding of voluntariness is essential under Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, and State v. Leiss, 258 Iowa 787, 140 N.W.2d 172.

The State asserts a finding of voluntariness is not required where the question is not raised. Voluntariness was the only issue generally recognized at the time Jackson v. Denno was decided. (Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 was decided the same day as Jackson v. Denno, and Miranda came much later). It argues a defendant may now challenge a confession either on the grounds of voluntariness, or because of violation of the right to counsel (Escobedo) or for failure to give the now famous forewarnings (Miranda). But a defendant is not entitled to rulings on these matters unless he raises them. Defendant did not raise the question of voluntariness and ordinarily cannot complain at this stage of the case. State v. Slater, Iowa, 153 N.W.2d 702.

Neither the motion to suppress evidence nor the objections at trial raised the question of voluntariness of the confession.

In Jackson v. Denno, 378 U.S. 368 at page 374, 84 S.Ct. 1774 the United States Supreme Court noted the trial court's awareness that defense counsel was questioning the circumstances under which Jackson was interrogated. The same cannot be said here. The question of whether the Miranda warnings were given was raised and defendant's capacity to understandably waive his rights after having received the warning was also brought to the attention of the court. Coercion, trickery, physical abuse or long continued questioning was not claimed.

Numerous cases have recently been before this court involving motions to suppress evidence. In each case we have noted the trial court's commendable action in making clear and detailed findings on the issues raised by the motion. State v. Holland, 258 Iowa 206, 214, 138 N.W.2d 86, 90; State v. Leiss, 258 Iowa 787, 140 N.W.2d 172, 174, 175; State v. Klinger, Iowa, 144 N.W.2d 150, 151. Here the court carefully ruled on every issue raised and specifically noted the ruling was *"on the grounds thus far urged."*

Sims v. State of Georgia, 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 states: "Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity. * * * Such rule is, as we have said, a constitutional rule binding upon the States and, under the Supremacy Clause of Article VI of the Constitution, it must be obeyed."

We do not find reversible error in the court's failure to rule on voluntariness. We have examined the record carefully as to procedures used by the police and find the question of voluntariness (as distinguished from compliance with admonitions contained in Miranda v. State of Arizona, supra, and Escobedo v. State of Illinois, supra) was not raised at trial. Further, from our own review of the record we have concluded the issue of voluntariness was met.

III. Defendant's third and fourth assignments are treated together. He claims the evidence fails to show he was properly advised of his constitutional rights and he

did not knowingly and intelligently waive his privilege against self-incrimination.

The judge at trial made the following ruling: "This has been ruled on by another judge in this court, who overruled a motion to suppress and held by that ruling that these officers could testify as to any statements which Mr. Hyde may have given, but even if that is the case, if I felt at this time he hadn't been sufficiently warned, I wouldn't hesitate to rule otherwise, but this man was told he had a right to remain silent, any thing he said could be used against him, he was entitled to a lawyer, and if he couldn't afford one, one would be obtained for him anyway, and that that applied to the time he was then and there under questioning.

"This man, as you say, has a fourth-grade education and can't read and write, but he is a mature adult, he has been able to get along in society here, has been before the courts before, and I don't believe Miranda goes so far as to say that after a proper warning such a man still cannot be questioned except with a lawyer provided."

■ Defendant feels the warnings given should have been more formal and the proof should have been stronger. The record shows defendant was fully warned and then said he did not want an attorney. The trial court twice found such to be the fact and overruled defendant's objections. We agree.

■ IV. Defendant's final assertion of error is premised on the claim that a not guilty verdict should have been directed for failure to prove intent. The factual recitation at the commencement of this opinion would seem to make detailed consideration of the assignment unnecessary. Intent is seldom susceptible to direct proof. It may be inferred from the circumstances. The circumstances shown here are sufficient for jury submission; State v. Ramsdell, 242 Iowa 62, 45 N.W.2d 503; State v. Williams, 66 Iowa 573, 24 N.W. 52; State v. Shelledy, 8 Iowa 477, 506. Affirmed.

All Justices concur, except RAWLINGS and MASON, JJ., who dissent.

RAWLINGS, Justice (dissenting).

Being unable to agree with the reasoning set forth in Division II of the majority opinion and ultimate conclusion reached, I respectfully dissent.

I. It is to me apparent the issue of voluntariness of admissions was raised in this case but not resolved as required by Sims v. State of Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593.

It is my understanding trial of defendant commenced January 30, 1967, therefore governed by the principles set forth in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772 16 L.Ed.2d 882, and perforce Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908.

However, the majority apparently fails to accord defendant recognition of this self-evident fact.

In Haynes v. State of Washington, 373 U.S. 503, 516–517, 83 S.Ct. 1336, 1345, 10 L.Ed.2d 513, a case decided prior to Miranda or Jackson, both supra, and even before Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, the United States Supreme Court, in a reversing opinion said: "The jury was instructed, in effect, not to consider as relevant on the issue of voluntariness of the confession the fact that a defendant is not reminded that he is under arrest, that he is not cautioned that he may remain silent, that he is not warned that his answers may be used against him, or that he is not advised that he is entitled to counsel. *Whatever independent consequence these factors may otherwise have, they are unquestionably attendant circumstances which the accused is entitled to have appropriately considered in determining voluntariness and admissibility of his confession."* (Emphasis supplied)

And in Davis v. State of North Carolina, 384 U.S. 737, 740–741, 86 S.Ct. 1761, 1764, 16 L.Ed.2d 895, opinion issued one week after Miranda, supra is this pertinent statement: "The review of voluntariness in cases in which the trial was held prior to our decisions in *Escobedo* and *Miranda* is not limited in any manner by these decisions. On the contrary, that a defendant was not advised of his right to remain silent or of his right respecting counsel at the outset of interrogation, as is now required by *Miranda,* is a significant factor in considering the voluntariness of statements later made. This factor has been recognized in several of our prior decisions dealing with standards of voluntariness. Haynes v. State of Washington, 373 U.S. 503, 510–511, 83 S.Ct. 1336, 1341–1342, 10 L.Ed.2d 513 (1963) ; Culombe v. Connecticut, 367 U.S. 568, 610, 81 S.Ct. 1860, 1883, 6 L.Ed.2d 1037 (1961); Turner v. Commonwealth of Pennsylvania, 338 U.S. 62, 64, 69 S.Ct. 1352, 93 L.Ed. 1810 (1949). See also Gallegos v. State of Colorado, 370 U.S. 49, 54, 55, 82 S.Ct. 1209, 1212, 1213, 8 L.Ed.2d 325 (1962). Thus, the fact that Davis (defendant) was never effectively advised of his rights gives added weight to the other circumstances described below which made his confessions involuntary."

Dealing with the subject at hand one state appellate court, in a decision issued prior to Miranda, recognized absence of in-custody pre-interrogation warnings was a significant factor in testing whether a confession attributed to an accused was freely and voluntarily given. State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 141 N.W. 2d 3, 10.

By virtue of the authorities cited and quoted supra, I am unable to agree with majority's holding to the effect that when, in a criminal proceeding, absence of Miranda warnings is asserted, the issue of voluntariness is not raised. In fact, whenever a confession or admission is challenged by reason of absence of the warnings required by Miranda, voluntariness is the ultimate issue presented. Stated otherwise, absence of Miranda warnings, deprivation of right to counsel, coercive tactics, and voluntariness cannot be neatly segregated. These elements are so inextricably interwoven as to preclude any severance one from the other.

For further discussion of the subject matter involved see dissent in Johnson v. Commonwealth of Massachusetts, 390 U.S. 511, 88 S.Ct. 1155, 20 L.Ed.2d 69, opinion filed April 1, 1968.

On the basis of the foregoing I would reverse and remand with directions that specific findings be made on the issue of voluntariness of any confessions or admissions allegedly given or made by defendant.

MASON, J., joins in this dissent.