Ronald L. JOHNSON, Petitioner,

v

Frank A. HALL et al., Respondents.

Civ. A. No. 76–2869–T.

United States District Court,
D. Massachusetts.

Jan. 31, 1979.

Edward Berkin, Dorchester, Mass., for petitioner.

John P. Corbett, Asst. Atty. Gen., Barbara A. H. Smith, Boston, Mass., for respondents.

## OPINION

TAURO, District Judge.

Petitioner seeks a writ of habeas corpus,[1] challenging his 1964 conviction in the Massachusetts Superior Court of a number of charges, including murder in the first degree of a Boston policeman.[2] At trial, petitioner's confession was admitted in evidence. The admission of that confession underlies the instant petition.

### I.

The confession at issue was obtained from petitioner in the early morning hours following his arrest. Petitioner objected to its admission on the sole ground that the confession was extracted from him after he had been physically mistreated by the police. Following a *voir dire*, the trial judge rejected petitioner's version of the events leading up to the confession and found the statement voluntary.[3] The confession was introduced into evidence before the jury. Defense counsel again objected, on the same grounds as those voiced during the *voir dire*.

---

1. 28 U.S.C. § 2254 (1970).

2. The other offenses were: 1) armed robbery while masked, 2) unlawfully carrying a firearm, 3) unlawfully carrying a revolver in a vehicle, and 4) assault and battery by means of a dangerous weapon.

3. For the purposes of this proceeding, this court will consider as the record the findings of the state trial court judge on defendant's motion for a new trial, as well as the Appendix of the Record of petitioner's writ of certiorari to the United States Supreme Court. The writ of certiorari related to proceedings following petitioner's final appeal in the Massachusetts courts. *See infra.*

At the close of the Commonwealth's case, petitioner chose to rest without presenting evidence. The jury convicted. Defendant is serving a life sentence.

On October 1, 1964, petitioner filed a motion for a new trial based on the principles enunciated in *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), a case decided subsequent to his conviction. In support of his motion for a new trial, petitioner asserted for the first time that his request for counsel during interrogation had been refused by the police. After hearing, the trial court rejected petitioner's assertions, distinguishing his case from *Escobedo* on the ground that petitioner had neither requested nor been denied the opportunity to consult with counsel.

Petitioner then appealed to the Supreme Judicial Court, assigning as error the admission in evidence of his confession. After that court affirmed his conviction,[4] petitioner sought certiorari from the Supreme Court. The Court granted the petition on October 9, 1967, but later dismissed the writ as improvidently granted, concluding that the record relevant to the constitutional claims was insufficient to permit determination of those issues. *Johnson v. Massachusetts,* 390 U.S. 511, 88 S.Ct. 1155, 20 L.Ed.2d 69 (1968).[5]

Petitioner now seeks habeas corpus relief on three grounds. First, he maintains that the state trial court deprived him of due process by failing to consider "the totality of the circumstances" surrounding his confession. Second, he contends that his confession was involuntary as a matter of law. Finally, he argues that the state trial court and appeals court committed constitutional error by placing the burden of proof upon him to prove the involuntariness of his confession.

## II.

The facts, brought out at the trial and the evidentiary hearing on petitioner's motion for a new trial, are as follows: In August 1963, petitioner held up a liquor store with a revolver. When chased by a police officer to a waiting get-away car, he shot and killed the officer and drove away. A subsequent car chase ended when petitioner's vehicle struck a wall, ricocheted into traffic hitting several cars and finally came to a halt after crashing into a bus. The front of petitioner's car was demolished and he was seen limping away from the scene of the accident. He was eventually apprehended at 9:30 p. m. and brought to the police stationhouse where he was booked and placed in a cell. Sometime after 10 p. m. he was taken to police headquarters.

Between midnight and 4:00 a. m. petitioner appeared in four police lineups. He was also interrogated by three police officers, in the presence of a police stenographer, for approximately forty minutes after the lineups. At 5:50 a. m. he confessed.

There was testimony at trial that petitioner was injured during the lineups and the interrogation. Several witnesses who observed him in the lineups testified that he was bleeding on or around the head and that he may have had cuts on other parts of his body. There was considerable dispute as to when and how petitioner was injured. Petitioner maintained that he was beaten by police officers.

Two weeks after the incident, petitioner was examined by a physician who found that he may have been suffering from a hematoma at the time he gave his statement to the police. The trial judge did not permit the doctor to testify at the *voir dire* as to the possible cause of the head injury. Despite a suggestion from the court to do so, no evidence was brought out concerning the possible effect of that injury on the petitioner at the time of his confession.

In his "Findings, Rulings and Order" on petitioner's request for a new trial, the trial

4. *Commonwealth v. Johnson,* 352 Mass. 311, 225 N.E.2d 360 (1967).

5. Justice Marshall, joined by Chief Justice Warren and Justice Fortas, dissented from the dismissal of the writ.

judge found unbelievable petitioner's statement at trial that he had not been injured in the car crash before his arrest. He also rejected petitioner's contention that he had been physically mistreated by the police and found that petitioner had been belligerent, offensive and uncooperative during the booking process. With respect to petitioner's *Escobedo* claim, the trial judge found that the police had not informed petitioner that he had the right to remain silent, and further found that petitioner had not knowingly waived his right to remain silent. On the other hand, the judge found that despite the petitioner's below average intelligence quota (86) and his multiple injuries, he had been sufficiently lucid to ask questions challenging the accuracy and credibility of the identifications made by some of the witnesses at the lineups.

### III.

Relying upon *Procunier v. Atchley*, 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971), petitioner contends that the Massachusetts state courts violated his right to due process under the Fourteenth Amendment by failing to consider "the totality of the circumstances" surrounding his confession. Specifically, he argues that the trial court's inquiries at both the *voir dire* and the motion for a new trial were limited to whether petitioner's confession was either (1) a product of physical coercion, or (2) in violation of petitioner's right to counsel.

In *Procunier*, the Supreme Court held that an applicant for federal habeas relief is not entitled to a new hearing on the voluntariness of a confession introduced at trial merely because of shortcomings in the state court procedure used to decide the voluntariness issue. Rather, he must show that, even apart from inadequacies in the state court procedures, his version of the events would require the conclusion that his statement was involuntary. 400 U.S. at 451, 91 S.Ct. 485.

In the course of its decision, the Court noted the appropriate constitutional test for determining the admissibility of a pre-*Escobedo* and pre-*Miranda* confession: "The question was whether the will of the defendant had been overborne so that the statement was not his free and voluntary act, and that question was to be resolved in light of the totality of the circumstances." 400 U.S. at 453, 91 S.Ct. at 489.

■ Assuming, without deciding, that *Procunier* required that the voluntariness of petitioner's confession be determined on the totality of the circumstances,[6] the record demonstrates that the trial court judge did consider "the totality of the circumstances" in determining that petitioner's confession was voluntary.[7]

Prior to or during the *voir dire*, there was evidence of petitioner's age, occupation, I.Q., and physical condition at the time of his custody. The trial judge invited testimony as to whether petitioner's injuries

---

**6.** Petitioner cites no cases in which the trial court's failure to consider the "totality of the circumstances" has been held to have violated a criminal defendant's right to due process under the Fourteenth Amendment. *Procunier, supra,* and *Makarewicz v. Scafati*, 438 F.2d 474, 477 (1st Cir.), *cert. denied*, 402 U.S. 980, 91 S.Ct. 1685, 29 L.Ed.2d 145 (1971), simply outline the appropriate constitutional standard which a reviewing court should use to judge the admissibility of a pre-*Escobedo*, pre-*Miranda* confession. *See* Section IV, *infra*.

**7.** This is so despite the fact that petitioner's trial counsel did not argue "totality of the circumstances" during his state proceedings. At the *voir dire*, he elected to claim that his client's confession was involuntary because of "a beating" that petitioner received after being

taken into custody. Nor did petitioner claim on appeal that the trial court had erred by failing to consider the "totality of the circumstances."

It is not necessary to decide whether petitioner's failure to present this argument to the state courts means that he has failed to exhaust his state remedies. *See, e. g., Picard v. Connor*, 404 U.S. 270, 275–78, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Salemme v. Ristaino*, 587 F.2d 81 at 86 (1st Cir. 1978). *See also*, 28 U.S.C. §§ 2254(b) and (c). This court regards petitioner's argument as one that is easily rejected. In light of the more compelling arguments advanced by petitioner *infra*, the court deems it appropriate to dispose of this argument without sending petitioner back to the state courts. *See St. Pierre v. Helgemoe*, 545 F.2d 1306, 1307 n. 1 (1st Cir. 1976).

affected his capacity to understand and withstand custodial interrogation. No such evidence was offered, however. In addition, the trial judge had an opportunity to assess petitioner's intelligence and capacity during his *voir dire* testimony in support of his claim of physical coercion.

In connection with petitioner's motion for a new trial, evidence was presented to the trial judge showing petitioner's prior experience with the police; the failure of the police to advise petitioner of his right to remain silent; petitioner's character and temperament, particularly his belligerent and defiant attitude toward the police; petitioner's questioning of identifying witnesses at the lineups; and petitioner's food intake during his night of custody.

Moreover, the trial court's "Findings, Rulings and Order" on petitioner's motion for a new trial reflect a careful consideration of the total circumstances in reaching the conclusion that petitioner's confession was given voluntarily. The trial judge noted therein that, on the basis of the evidence presented during *voir dire*, he had been satisfied "by the fair weight of the evidence" that the defendant had made his statement voluntarily. Thus, in his first non-extemporaneous finding since the beginning of the proceedings, the trial judge refused to hinge his finding of voluntariness at the *voir dire* solely on the absence of physical coercion. Rather, his finding was articulated in broad terms, referenced to "the fair weight of the evidence."

This court, therefore, finds no merit to petitioner's claim that the trial judge failed to consider "the totality of the circumstances" surrounding petitioner's statement to the police. The extemporaneous remarks of the judge made at the close of the *voir dire*[8] were limited, and were directed to petitioner's then prime contention of physical coercion by the police. Although the trial judge did not use the catch phrase "totality of the circumstances" in his memorandum, it is clear from its contents that he employed the "totality" concept in arriving at his determination of voluntariness.

*IV.*

Petitioner next contends that his confession was involuntary as a matter of law— that his will was so overborne that his confession cannot be deemed "the product of a rational intellect and a free will." *Blackburn v. Alabama,* 361 U.S. 199, 208, 80 S.Ct. 274, 280, 4 L.Ed.2d 242 (1960).

■ The trial court's detailed findings of fact[9] demonstrate that at the time of his arrest, petitioner was a twenty-nine year old man with a sixth grade education and an I.Q. of 86. He was in custody for almost eight and one-half hours during which he appeared in four police lineups and was not informed of any right to remain silent or to have counsel. He then made an inculpatory statement to the police at 5:50 a. m., after a forty minute interrogation in the presence of a police stenographer. It is also clear that petitioner sustained an injury to his head in the car accident prior to his arrest.

■ Petitioner correctly cites cases with similar facts and issues which have treated the subject of voluntariness of confessions. *See, e. g., Reck v. Pate,* 367 U.S. 433, 441–42, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961); *Makarewicz v. Scafati,* 438 F.2d 474, 478–79 (1st Cir.), *cert. denied,* 402 U.S. 980, 91 S.Ct. 1685, 29 L.Ed.2d 145 (1971). *See generally, Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The process of decision in this area requires more than a mere "color-matching" of cases, however. *Reck v. Pate, supra,* 367 U.S. at 442, 81 S.Ct. 1541. None of these

---

8. After hearing argument from counsel for both sides, the trial judge stated: "The contention of the defendant, as I understand it, is that the statement was involuntarily given because of physical force applied to the defendant by the police so that the statement was coerced from him." Defendant's counsel acknowledged that this was the position of the defendant.

9. Petitioner has not contested those findings and they are entitled to a presumption of validity unless shown to be erroneous by convincing evidence. *LaVallee v. Delle Rose,* 410 U.S. 690, 695, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973).

cases turn on the presence or absence of a single controlling criterion. Rather, a careful scrutiny of the totality of the circumstances is required to determine if petitioner's confession was the product of an essentially free and unconstrained choice. *Schneckloth v. Bustamonte, supra,* 412 U.S. at 225–26, 93 S.Ct. 2041.

█ Interrogating an injured defendant of low intelligence at 5:00 a. m. without informing him of his rights invites a skeptical reaction. The record, however, demonstrates a number of mitigating factors. Petitioner did not receive his injuries as a result of mistreatment by the police. Despite inquiry from the trial judge, no evidence was offered that the injury affected petitioner's mental capacity to make a statement. In fact, petitioner was sufficiently lucid to ask questions challenging the accuracy or credibility of some of the identifying witnesses at the lineups. Additionally, petitioner was no stranger to the inside of a police station. He was a veteran of a number of arrests and interrogations. On those occasions, he had consistently expressed, in foul and offensive language, a belligerent and uncooperative attitude toward police officers. Shortly after his booking in the instant matter, he stated that he knew his rights. It is fair to infer that he was not intimidated by his surroundings.

In short, the record as a whole does not reveal any of the grisly circumstances present in other confession cases involving persons of low intelligence. *See, e. g., United States v. Hull,* 441 F.2d 308 (7th Cir. 1971) (confession was involuntary when made by defendant who had mental age of an 8 or 9 year-old and who was interrogated by relays of officers from 12 midnight to 12 noon and who was crying or moaning at

various times). Nor was petitioner forced to undergo interrogation for a prolonged period in which substantial coercive influences were brought to bear upon him. Although he was held for over eight hours and subjected to four lineups, he was interrogated for only 40 minutes in the presence of a police stenographer. *Cf. Davis v. North Carolina,* 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966) (confession was involuntary when accused in custody for 16 days, was interrogated intermittently each day and spoke to no one but the police). While the police failed to inform petitioner of his right to remain silent and right to counsel, this factor, though significant, is not determinative in a pre-*Escobedo,* pre-*Miranda* setting. *Makarewicz v. Scafati,* 438 F.2d 474, 479 (1st Cir.), *cert. denied,* 402 U.S. 980, 91 S.Ct. 1685, 29 L.Ed.2d 145 (1971). The conclusion that this court draws from the record is that petitioner's confession was the product of an "essentially free and unconstrained choice." *Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961) (plurality opinion).[10]

## V.

Finally, petitioner contends that the Massachusetts state courts violated his constitutional right to due process of law and his privilege against self-incrimination by placing the burden upon him to prove the involuntariness of his confession and by creating a presumption of voluntariness.

The preliminary question which must be addressed is whether petitioner is entitled to raise this argument in a federal habeas proceeding. Two underlying issues are presented: 1) whether the petitioner failed to comply with any state procedural requirement concerning the presentation of this argument which would bar its review

**10.** Petitioner places some reliance on the dissents of the three Supreme Court judges from the order dismissing petitioner's writ of certiorari to support his contention that his confession was involuntary. *Johnson v. Massachusetts, supra,* 390 U.S. at 512, 88 S.Ct. 1155. If anything, the Order of the Supreme Court dismissing the writ cuts against petitioner's argument. A majority of the Court found that the record relevant to petitioner's constitutional claims was insufficient to permit decision of those claims. Petitioner has not requested a further evidentiary hearing in this proceeding. The record is no more helpful to the petitioner now than it was when a majority of the Supreme Court determined that it was inadequate to support his involuntariness claim.

here, and 2) whether petitioner has failed to exhaust his state remedies as required by 28 U.S.C. §§ 2254(b) and (c).

## A. Failure to Comply with State Procedural Rule

In *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), the Supreme Court held that a defendant's failure to comply with state procedural requirements will not be deemed a waiver of federal constitutional claims on habeas corpus, unless done for deliberate tactical reasons. That holding has recently been modified. In *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), defendant raised no *Miranda* issue at his state trial. At a subsequent habeas proceeding in federal court, he claimed that he had had no understanding of his *Miranda* warnings. Rejecting the sweeping rule of *Fay*, the Court held that when a defendant fails to comply with a state procedural rule,[11] he is barred from raising the issue in a federal habeas review, absent a showing of actual prejudice and cause for noncompliance. 433 U.S. at 87, 97 S.Ct. 2497.

Respondents have failed to note any state procedural rule with which petitioner failed to comply at his state trial. In any event, this case is distinguishable from *Wainwright*. Unlike the defendant in that case, petitioner raised an objection concerning the admissibility of his confession and received the *voir dire* hearing required under *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Moreover, there is no indication that petitioner's trial counsel was engaged in the practice of "sandbagging" taking a chance on a verdict of not guilty in the state court with the intent to raise his client's constitutional claims in a federal habeas proceeding if the initial gamble did not pay off.[12]

At the time of petitioner's trial in 1964, it is clear that under Massachusetts law a defendant's confession was presumed to have been given voluntarily, *Commonwealth v. McGarty*, 323 Mass. 435, 438, 82 N.E.2d 603 (1948), and that the burden was upon the defendant to rebut this presumption. *Commonwealth v. Sheppard*, 313 Mass. 590, 604, 48 N.E.2d 630 (1943). Even if petitioner had raised in the state court the argument that he seeks to present here, the trial judge would have felt bound by precedent to reject it. Thus, the presentation of this argument during the state proceedings would not have contributed to "finality in criminal litigation;" a concern that obviously influenced the Court's decision in *Wainwright*. See 433 U.S. at 88–91, 97 S.Ct. 2497.

## B. Failure to Exhaust State Remedies

This court also holds that petitioner has exhausted his state remedies as required by 28 U.S.C. §§ 2254(b) and (c). As respondents note, it is undeniable that petitioner failed to argue in the Massachusetts courts that the rule on presumptions and burden of proof in a voluntariness hearing was unconstitutional. Petitioner's assignment of error to the Supreme Judicial Court with respect to the admission of his confession was phrased in broad terms:

> Assignment Nos. 7 and 12. The Trial Court erred in admitting over objection the statement of defendant Johnson to Detective Lt. Donovan while in custody and in denying defendant Johnson's Motion for a New Trial based thereon.

Notwithstanding the general nature of the assignment of error, the Supreme Judicial Court reaffirmed the Massachusetts rule on presumptions and burden of proof in the course of disposing of petitioner's appeal. *Commonwealth v. Johnson*, 352 Mass. 311, 315–16, 225 N.E.2d 360 (1967). This court holds, therefore, that petitioner provided the Massachusetts courts with an opportunity to apply controlling legal principles to the facts bearing upon his constitu-

---

11. In *Wainwright*, petitioner did not comply with the Florida contemporaneous objection rule.

12. The prevention of "sandbagging" was of major concern to the Court in *Wainwright*, and a reason for modification of the liberal *Fay* "knowing-and-deliberate-waiver-rule." 433 U.S. at 89, 97 S.Ct. 2497.

tional claim, satisfying the exhaustion requirement set out in *Picard v. Connor*, 404 U.S. 270, 277, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

Although petitioner exhausted his state remedies following his conviction, this court must now consider whether the Massachusetts courts should be given an opportunity to determine whether constitutional principles established since petitioner's conviction are to be applied retroactively. *See St. Pierre v. Helgemoe*, 545 F.2d 1306, 1309 (1st Cir. 1976); *Subilosky v. Massachusetts*, 412 F.2d 691, 692–94 (1st Cir. 1969). *Cf. Makarewicz v. Scafati*, 438 F.2d 474, 477 (1st Cir.), *cert. denied*, 402 U.S. 980, 91 S.Ct. 1685, 29 L.Ed.2d 145 (1971).

For a full understanding of this issue, a brief explanation of petitioner's legal position is necessary. Petitioner argues that the Massachusetts rule concerning burden of proof and presumptions in a voluntariness hearing was unconstitutional at the time of his conviction. For reasons explained in subsection C, *infra*, this court rejects that substantive argument and determines that the only viable issue in petitioner's burden of proof claim is whether the principles enunciated in *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972), should be applied retroactively.

■ It is true that petitioner could return to the Massachusetts courts to seek a retrial or rehearing of his appeal on the theory that *Lego* should be applied retroactively by the Massachusetts courts.[13] But the mere possibility of a successful application to the state courts is insufficient to bar federal habeas review. *Roberts v. LaVallee*, 389 U.S. 40, 42–43, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967) (per curiam). Moreover, when the sole question in a habeas proceeding is the retroactivity of a federal constitutional decision, federal courts may decide the issue, without requiring the petitioner to return to the state courts for reconsideration in light of a new constitutional principle. *See Roberts v. Russell*, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968) (per cu-

riam) (holding *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), retroactive).

■ In a similar vein, the First Circuit has suggested that when the applicability of the facts to the constitutional principle is clear, it is proper for a federal court to determine the issue of retroactivity. *Subilosky v. Massachusetts, supra*, 412 F.2d at 693. Here, there is no substantial question concerning the application of the underlying facts to the legal principles enunciated in *Lego*.

Although principles of comity and federalism are particularly relevant in a habeas proceeding, this is not a case in which the state has a substantial interest in ruling once again on petitioner's case. *Compare Subilosky v. Massachusetts, supra*. The issue for decision in this case is controlled entirely by established federal principles. To dismiss the petition for failure to exhaust state remedies would almost certainly lead to yet another case on a crowded state docket and, quite conceivably, a repetitious action in federal court should the state courts fail to grant petitioner relief.

Additionally, this court is cognizant of the fact that petitioner was convicted over eighteen years ago. Sending him back to the state courts at this stage would be time-consuming and burdensome. The requirement of exhaustion of state remedies in the federal statute should not be interpreted to require the exhaustion of the habeas petitioner. The petitioner is entitled to a prompt determination of whether new principles of constitutional law have any bearing upon his 1964 conviction.

### C. *The Merits of Petitioner's Claim*

Looking to the merits of petitioner's claim, it is not entirely clear upon whom the trial court judge imposed the burden of establishing the voluntariness or involuntariness of petitioner's confession. In his formal findings on defendant's motion for a new trial, the trial court judge stated that at the *voir dire* he had found petitioner's

---

13. *See, e. g.*, M.G.L.A. ch. 278 § 29.

statement voluntary "by the fair weight of the evidence." This finding suggests that the trial judge may not have imposed any burden of proof upon the petitioner. During the *voir dire*, however, the judge made extemporaneous references to the then Massachusetts rule on presumptions and burden of proof in a contested confession hearing. In his final ruling at the *voir dire*, the judge stated: "I am not satisfied from the evidence that it [the confession] was not freely and competently given. . . . ." That extemporaneous remark suggests that he imposed a burden upon petitioner to establish involuntariness. In affirming petitioner's conviction, the Supreme Judicial Court also referred with apparent approval to the then Massachusetts rule imposing the burden of proof upon the petitioner. *Commonwealth v. Johnson*, 352 Mass. 311, 315–316, 225 N.E.2d 360 (1967).

Despite some ambiguity, a fair reading of the record compels this court to conclude that the Massachusetts courts decided the admissibility of petitioner's confession at least by reference to a legal standard which presumed voluntariness, and placed the burden upon a criminal defendant to prove his confession involuntary.[14] Consequently, it is necessary to examine the constitutionality of the Massachusetts rule at the time of petitioner's conviction.

In *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the Supreme Court was faced with the New York practice of permitting a confession to be admitted as evidence in a jury trial unless a preliminary determination was made that it could not be deemed voluntary under any set of circumstances. *Jackson* held that when the prosecution seeks to introduce a confession which the defendant claims was involuntary, the trial judge must make "a reliable and clear-cut determination of the voluntariness of the confession." 378 U.S. at 391, 84 S.Ct. at 1788. The Court found this procedure necessary because of the difficulty that a jury might have in disregarding a confession if it found it to be involuntary, as well as the fundamental right of the accused not to condemn himself by his own utterances. *Jackson* has retroactive applicability to petitioner's trial. *See Johnson v. New Jersey*, 384 U.S. 719, 727–28 (1967).

There can be no question that petitioner received a clear-cut determination of the voluntariness of his confession. The judge held a *voir dire* evidentiary hearing outside the presence of the jury, and made an independent appraisal of the voluntariness of the confession. Later, in considering a motion for a new trial, the trial judge issued a memorandum which considered the total circumstances surrounding the confession.

*Jackson* did not deal directly with the issue of burden of proof in a voluntariness hearing. That question was decided some eight years later in *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). In *Lego*, the Supreme Court rejected the contention that the reasonable doubt burden of proof imposed upon the prosecution by *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), was applicable to a *Jackson*-type hearing. Because the purposes behind a *Jackson* hearing were not directly related to improving the reliability of jury verdicts, the Court concluded that a less stringent standard of proof was appropriate: "Thus the prosecution must prove at least by a preponderance of the evidence that the confession was voluntary." 404 U.S. at 489, 92 S.Ct. at 627.

14. In *Rogers v. Richmond*, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961), the Court held a trial court and state Supreme Court had committed constitutional error by referring to the "reliability" of a confession in deciding that it was voluntary. In determining that the state courts had in fact used the unconstitutional standard, the Court relied upon oral statements made by the judge at trial, references to the standard by the state Supreme Court, and references to the standard in other state Supreme Court cases. 365 U.S. at 541–43, 81 S.Ct. 735. All of these factors were present in petitioner's state court proceedings. To assume that the Massachusetts courts did not impose the burden of proof upon the petitioner, solely on the basis of the quoted statement of the trial judge's memorandum, would be to undercut *Rogers*.

Petitioner argues that *Lego* interpreted *Jackson* to hold that the prosecution must bear the burden, in a *voir dire* hearing, of proving a confession voluntary. Although petitioner's contention is not a frivolous one, this court cannot accept his reading of *Lego*. First, the Court stated specifically in *Lego* :

> We did not think it necessary, or even appropriate, in *Jackson* to announce that prosecutors would be required to meet a particular burden of proof in a *Jackson* hearing held before the trial judge. Indeed, the then-established duty to determine voluntariness had not been framed in terms of a burden of proof, nor has it been since *Jackson* was decided.

404 U.S. at 484, 92 S.Ct. at 624 (footnotes omitted).

Second, it seems even more unlikely that *Jackson* could be interpreted to have held the Massachusetts rule unconstitutional in light of the fact that the general Massachusetts procedure with respect to confessions was cited with approval in *Jackson*. In footnote 8 of *Jackson*, the Court stated:

> We raise no question here concerning the Massachusetts procedure. In jurisdictions following this rule, the judge hears the confession evidence, himself resolves evidentiary conflicts and gives his own answer to the coercion issue, rejecting confessions he deems involuntary and admitting only those he believes voluntary. It is only the latter confessions that are heard by the jury, which may then, under this procedure, disagree with the judge, find the confession involuntary and ignore it. Given the integrity of the preliminary proceedings before the judge, the Massachusetts procedure does not, in our opinion, pose hazards to the rights of a defendant.

378 U.S. at 378 n. 8, 84 S.Ct. at 1781.

The Massachusetts rule on burden of proof was well established at the time of *Jackson*. *See infra*. If the Court in *Jackson* had intended to prohibit the Massachusetts practice of placing the burden of proof upon a defendant in a voluntariness hearing, it would not have included such an unqualified endorsement of the general Massachusetts practice without at least some caveat concerning its possible constitutional infirmities.

*Lego* did state the hope that a judge at the time of *Jackson* would admit into evidence only those confessions that he reliably found, "at least by a preponderance of the evidence," had been voluntarily made. 404 U.S. at 484, 92 S.Ct. at 624. That portion of *Jackson*, however, is clearly dicta. This court cannot accept petitioner's contention that such dicta served to abrogate the clear language of *Jackson* and *Lego* cited above. This court holds, therefore, that as of *Jackson*, there was no constitutional requirement that the prosecution bear the burden of establishing the voluntariness of a confession.

■ The question remains, however, whether the doctrine in *Lego* imposing such a burden must be given retroactive effect. The Supreme Court has recently reaffirmed the rule recognized in *Ivan v. City of New York*, 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972), that where the major purpose of a new constitutional doctrine is to overcome an impairment in the truth-finding function of a criminal trial, and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule is given retroactive effect. *Hankerson v. North Carolina*, 432 U.S. 233, 243, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977). Whether the purpose of a new constitutional rule is to enhance the integrity of the fact-finding process is a question of "degree." *Johnson v. New Jersey*, 384 U.S. 719, 729, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). When there is little impact on fact-finding, the Court has looked to questions of reliance by the state on the old rule, and the impact which retroactive application would have on the administration of justice. *Stovall v. Denno*, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

■ With these principles in mind, this court holds that the rule announced in *Lego* concerning burden of proof does not have retroactive effect, even though the underly-

ing *Jackson* doctrine was applied retroactively.

In a reexamination of the purposes behind a voluntariness hearing, the Court in *Lego* concluded that its decision in *Jackson* "was not based in the slightest on the fear that juries might misjudge the accuracy of confessions and arrive at erroneous determinations of guilt or innocence." 404 U.S. at 484–85, 92 S.Ct. at 624. Rather, the rule announced in *Jackson* was more in the nature of an exclusionary rule, "designed to safeguard the right of an individual, entirely apart from his guilt or innocence, not to be compelled to condemn himself by his own utterances." 404 U.S. at 485, 92 S.Ct. at 625. *See also LaFrance v. Bohlinger*, 499 F.2d 29, 32–33 (1st Cir. 1974), for a discussion of the purposes behind a *Jackson* voluntariness hearing.

Given the fact that the purpose of a voluntariness hearing, and thus the purpose of the rule announced in *Lego*, has nothing to do with improving the reliability of the truth finding process, it is appropriate to look to questions of reliance by the state on the old rule, and the impact of the new rule on the administration of justice, to resolve the issue of retroactivity. *See Linkletter v. Walker*, 381 U.S. 618, 636, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), refusing to apply retroactively the Fourth Amendment exclusionary rule of *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

As noted above, the general Massachusetts practice of determining the admissibility of confessions in a criminal case was discussed with approval by the Court in *Jackson*. At the time of petitioner's conviction, Massachusetts law, for over one hundred years, had placed the burden upon the defendant to show his confession involuntary. *See, e. g., Commonwealth v. Tuckerman*, 10 Gray 173, 194 (1857); *Commonwealth v. Congdon*, 265 Mass. 166, 174, 165 N.E. 467 (1928); *Commonwealth v. Sheppard*, 313 Mass. 590, 48 N.E.2d 630 (1943). Nor was Massachusetts, at the time of peti-

tioner's conviction, the only jurisdiction to place the burden of proof upon a defendant in a voluntariness hearing.[15] This court finds that the Massachusetts courts reasonably relied upon established precedent which petitioner now seeks to overturn retroactively.

It is equally clear that retrospective application of *Lego* would severely tax the administration of justice. Given the century old application of the Massachusetts presumption rule, new voluntariness hearings would undoubtedly have to be held in an unpredictable number of cases in which a defendant was convicted partly on the basis of a confession introduced into evidence. If *Lego* were applied retroactively, many witnesses would be unavailable, and much of the evidence destroyed, misplaced or deteriorated. To "legitimate such an extraordinary procedural weapon that has no bearing on guilt would seriously disrupt the administration of justice." *Linkletter v. Walker, supra*, 381 U.S. at 637–38, 85 S.Ct. at 1742. Accordingly, the court declines to apply retroactively the rule announced in *Lego v. Twomey* to petitioner's original trial.

Petitioner received a fair trial. The voluntariness of his confession was determined after a full *voir dire* hearing covering the totality of the circumstances. The evidence against him was overwhelming. The petition for habeas corpus is denied.

An order has issued.

---

15. *See, e. g., Britt v. State*, 242 Ind. 548, 180 N.E.2d 235, 239 (1962); *State v. Kelley*, 253 Iowa 1314, 115 N.W.2d 184, 190 (1962); *State v. Merrow*, 161 Me. 111, 208 A.2d 659, 662 (1965); *State v. Litteral*, 227 N.C. 527, 43 S.E.2d 84, 88 (1947).