COMMONWEALTH *vs.* RONALD L. JOHNSON & another[1]
(and four companion cases[2]).

Suffolk.   December 5, 1966. — April 4, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Evidence,* Relevancy and materiality; Opinion: expert; Admissions and confessions; Presumptions and burden of proof; Of identity; Judicial discretion; Of motive. *Constitutional Law,* Assistance of counsel. *Practice, Criminal,* Waiver, Assistance of counsel. *Waiver. Homicide.*

There was no error at the trial of a criminal case in the exclusion of a question to a doctor, who had seen the defendant for the first time two weeks after the crime, as to whether the doctor "had an opinion as to the cause" of a subdural hematoma the defendant was suffering from when seen by him where it did not appear that the doctor was aware of any facts on which he could base an opinion relating the hematoma to a time, shortly after the crime, when the defendant made an alleged confession, and there was no offer of proof of any such facts. [315]

An alleged confession by the defendant in a criminal case is prima facie voluntary, and he has the burden of proving it involuntary. [315–316]

There was no error in a ruling by the trial judge at the completion of a voir dire in a criminal case that a confession to police which the defendant contended had been "involuntarily given" was admissible where the judge found that the defendant's testimony that the confession had been made because of physical abuse or threats of abuse by police was "unreliable and not believable," that there had been no physical coercion of the defendant, and that the confession was voluntary. [316]

A new trial of a capital case was not required in the "interests of justice" on the ground that after the trial judge had held a voir dire in the

———

[1] Herbert Graves, Jr.

[2] Two companion cases are by the Commonwealth against Ronald L. Johnson and Herbert Graves, Jr., and two companion cases are by the Commonwealth against Ronald L. Johnson.

Commonwealth *v.* Johnson.

jury's absence on the issue of the voluntariness of a confession made to police by the defendant and had concluded that it was voluntary and ruled it admissible the judge had not instructed the jury to disregard the confession unless they found it had been made voluntarily where it appeared that after the ruling no evidence that the confession was involuntary was presented to the jury and the voluntariness of the confession was not otherwise challenged and the defendant's counsel purposely let that issue rest on the ruling. [316–317]

The Federal Constitution did not require the application of the principles set forth in *Miranda* v. *Arizona,* 384 U. S. 436, to a Massachusetts criminal case tried before the date of the decision in the *Miranda* case, and this court declined to so apply such principles. [318]

There was no error in the denial of a motion for a new trial of a criminal case on the ground that the judge had failed to consider certain important factors on the issue of the voluntariness of a confession made to police by the defendant, which the judge at a voir dire in the jury's absence had found to have been "freely and competently given" and admissible, where it appeared that such factors had not been raised during the voir dire, that thereafter the issue of voluntariness of the confession had purposely not been pursued by the defendant at the trial, and that at the hearing on the motion the factors on which the defendant relied were considered and passed upon by the judge. [318–319]

There was no abuse of discretion at a trial for armed robbery, while masked, in a store, in permitting a customer of the store, who described a man he had seen outside the store just before the customer entered it, to state at the close of his testimony on direct examination that "to the best of . . . [his] knowledge, belief and recollection" the man he had seen outside the store was the same man that he had seen rush by him in the store and perpetrate the robbery, although previously, in answer to a question by the judge, the customer had stated that he could not "say it was the same man." [319–320]

At a trial for the murder by shooting of a police officer, brief testimony relative to the place where the victim fell, the posture of his body and the course of the bullets through it, and surgical efforts to save his life was properly admitted. [320]

At the trial of an indictment for robbery, there was no error in the admission of evidence of conversations of the defendant with an automobile salesman on the day preceding the robbery and on the day of the robbery regarding the defendant's purchase of an automobile in which he at first stated that he had "no visible means of support" but later stated that "he was getting more money" and "would have a substantial amount" of money to "settle up on the automobile" on the day following the robbery. [320–321]

The admission in evidence at a murder trial of a confession by one of two defendants incriminating his codefendant was not an adequate ground for granting the codefendant a new and separate trial where it appeared that before trial the codefendant had examined the confession, that he had made no motion for a severance and had taken no exception to the admission of the confession in evidence, and that the trial judge had correctly instructed the jury as to the limited effect thereof. [321]

Conviction upon an indictment for murder in the first degree of a defendant who contended that before the commission of the murder he had "completely detached" himself from an enterprise with a confederate to rob a store was warranted by evidence that the defendant parked his automobile near the store and remained in it while his confederate committed the robbery, that when the defendant saw a commotion near the store he drove away but stopped nearby to let his confederate in on the passenger side of the automobile, that a police officer approached it and ordered the defendant out of it and proceeded to its passenger side, and that the confederate then shot and mortally wounded the officer and the defendant leaped out of the automobile and fled. [321]

INDICTMENTS found and returned on August 6, 1963.

The cases were tried in the Superior Court before *Murray, J.*

*John M. Harrington, Jr.* (*John A. Pike* with him) for the defendant Johnson.

*Joseph J. Balliro* for the defendant Graves.

*John F. McAuliffe,* Assistant District Attorney (*James F. Sullivan,* Assistant District Attorney, with him), for the Commonwealth.

KIRK, J. The two defendants were indicted, tried and found guilty of murder in the first degree of James B. O'Leary. The jury recommended that the death penalty not be imposed on Graves; no recommendation was made as to Johnson. On a separate indictment Johnson was found guilty of armed robbery, while masked, of Jacob Berman; Graves was found guilty of armed robbery of Berman. Both defendants were found guilty of assault and battery on Berman by means of a dangerous weapon. Johnson, in addition, was found guilty of unlawfully carrying a firearm, and unlawfully having a firearm under his control in a vehicle. The trial was held subject to G. L. c. 278, §§ 33A–33G, and the cases are here on appeal with assignments of error.

The trial commenced January 13, 1964, and was concluded January 25, 1964. The evidence showed that about 9 P.M. August 1, 1963, Berman was the sole employee then on duty at the Copley Wine and Liquor Company, Boylston Street, Boston. Johnson, wearing a mask and armed with a revolver, entered the store, struck Berman on the cheekbone with the revolver, ordered two customers to lie on the

floor, and took money which he forced Berman to remove from the cash register. After Johnson left the store he was pursued by Berman and others via Exeter, Newbury and Fairfield streets to Commonwealth Avenue across the Mall. Boston Police Officer James B. O'Leary, who had joined the pursuit at the intersection of Exeter and Newbury streets, followed Johnson diagonally across Commonwealth Avenue. Johnson entered on the passenger side of a two-toned Buick convertible which was stopped in the outbound lane on Commonwealth Avenue. The car was being driven by Graves, to whom Johnson had recently transferred ownership. Graves knew that Johnson had a gun and that he was going to hold up the liquor store. Graves expected to receive half of the money. He had remained in the car, which was parked around the corner from the store, while Johnson went into the store. When he saw the commotion near the store, he started the car and drove outbound on Commonwealth Avenue. Graves stopped the car when Johnson came across the Mall on Commonwealth Avenue.

Officer O'Leary approached the car and ordered Graves out of the vehicle. O'Leary then proceeded to the passenger side of the vehicle. As he did so, two shots rang out. O'Leary, mortally wounded, fell to the street. Graves leaped from the driver's side of the car and ran along Fairfield Street, then through an alley to Gloucester Street, where he hailed a taxi which took him to the place where Johnson lived in Roxbury. Johnson drove off in the car. Police officers, alerted by the police alarm, saw Johnson in the Fenway and pursued him through several streets in the Fenway and Roxbury areas. In the course of the chase the car driven by Johnson struck a wall, hit four or five motor vehicles, and finally came to a halt after crashing into a bus. The front of the Buick was demolished. Johnson, limping, fled from the Buick and went over a fence. He was eventually apprehended under a back porch where he had sought concealment.

Officer O'Leary, in the meantime, had been taken to the Massachusetts General Hospital where, shortly before 3 A.M.

on August 2, 1963, he was pronounced dead of gunshot wounds. Ballistics evidence showed that the bullet removed from O'Leary's body had been fired from the .38 calibre Smith & Wesson revolver which had been found beneath the Buick convertible after the collision with the MTA bus.

### JOHNSON'S ASSIGNMENTS OF ERROR.

1. We deal first with those assignments of error (6, 7, 12, 13) which relate to a statement amounting to a confession made to the police by Johnson after his arrest, at a time when he was not represented by counsel. The statement was stenographically taken and transcribed. When the statement was offered at the trial, Johnson objected to its admission in evidence. A voir dire was held.

At the voir dire a question asked by the defendant of a doctor called by him was excluded (assignment 6). There was no error. The doctor, who had seen Johnson for the first time on August 15, 1963, at the Boston City Hospital, made a diagnosis on August 16, 1963, that Johnson was suffering from a subdural hematoma. The diagnosis was confirmed by an operation performed on August 17. In the opinion of the doctor the condition had existed for one or two weeks. The excluded question was whether the doctor had "an opinion as to the cause of this subdural hematoma." There is no indication that the doctor was aware of any set of facts, hypothetical or otherwise, upon which he could predicate an opinion which would have relevance to Johnson's physical condition on August 1 or 2, 1963. Despite the judge's suggestion, no offer was made which would aid the judge in determining whether, if the witness had an opinion of the cause of Johnson's condition on August 15, 1963, it related to the events of August 1 or 2. Cf. *Commonwealth* v. *Banuchi,* 335 Mass. 649, 653–654; *Commonwealth* v. *Burke,* 344 Mass. 243, 246.

There was no error in the judge's ruling at the completion of the voir dire that Johnson's statement to the police was admissible in evidence (assignment 7). When the statement was sought to be introduced at the trial, it was prima

facie voluntary. *Commonwealth* v. *McGarty*, 323 Mass. 435, 438. *Commonwealth* v. *Beaulieu,* 333 Mass. 640, 655. The burden was on the defendant to show that the statement was not voluntarily made. *Commonwealth* v. *Sheppard,* 313 Mass. 590, 604. The only ground upon which the defendant objected to its admission was that it "was involuntarily given because of physical force applied to the defendant by the police." The question was one of fact to be decided by the judge in the first instance. The judge found, after hearing, that there had been no physical coercion of the defendant. In a statement of findings subsequently filed (*Commonwealth* v. *Cook,* 351 Mass. 231, 234) the judge stated that Johnson's testimony that the statement had been made because of physical abuse or threats of abuse by the police was "unreliable and not believable." Since the evidence upon which the defendant relied to exclude the statement was found unworthy of belief, the judge properly concluded that the statement was admissible.

The defendant argues that there was error (assignment 13) in that the judge, after ruling that Johnson's statement was admissible, did not instruct the jury to disregard it unless they found it was made voluntarily. No exception was saved at the trial. The defendant argues, however, that the "interests of justice" require that the assignment be considered and a new trial ordered. Although an assignment of error not based on an exception brings nothing to this court for review, *Commonwealth* v. *Chester,* 337 Mass. 702, 703, and cases cited, we have considered the issue in light of the broad power conferred on us under G. L. c. 278, § 33E.

We find no basis for disturbing the verdicts on the assigned ground. Although the judge may pass upon the voluntariness of a statement in the first instance, the final determination is one of fact for the jury. *Commonwealth* v. *Makarewicz,* 333 Mass. 575, 585. In the cases before us, after the judge found that the statement was voluntarily made, the voluntariness of the statement was not thereafter challenged at the trial. No evidence was presented to the jury from which they could find that the statement was in-

voluntarily made. When the parties rested, the judge conferred with counsel about arguments and the charge. At the conference, there was no mention of the issue of the voluntariness of Johnson's statement. There was no request for an instruction regarding it. Johnson's counsel made no reference to the issue in his argument to the jury, which was mainly a plea that the death penalty not be imposed. No exception was taken to the judge's charge.

It seems clear to us from the transcript that the defendant was content to let the issue of voluntariness rest on the ruling made by the judge in the absence of the jury. The alternative was to revive and emphasize the issue by having the judge instruct the jury that, having heard the evidence on the voir dire, he had determined that the statement was voluntarily made, and by the further instruction that the jury could find that it was involuntary if there was evidence presented to them which persuaded them to that conclusion, when in fact there was no such evidence before the jury. The defendant's conduct of his cases indicates a deliberate decision not to press the issue of involuntariness when it could have been raised seasonably before the jury. "It is well settled that a party cannot reserve for a motion for a new trial a point that he could have raised at the trial." *Commonwealth* v. *Doyle,* 323 Mass. 633, 638, and cases cited. This rule has particular pertinency when the point now argued was omitted not by the oversight, but by the purpose, of counsel. The representation implied in the conduct of the defence was that the issue of voluntariness was not in controversy. The judge was therefore under no duty to charge the jury on that issue. See *Dalton* v. *Post Publishing Co.* 328 Mass. 595, 598–599; *Commonwealth* v. *Kiernan,* 348 Mass. 29, 58.

Assignment of error 12 relates to the denial of the defendant's motion for a new trial. The motion was made by newly engaged counsel eight months after the verdicts of guilty and was based upon *Escobedo* v. *Illinois,* 378 U. S. 478, which had been decided subsequent to the trial of the case. The defendant's contention was that he had requested and been denied counsel prior to the time that his

statement was given to the police. The judge, after hearing, expressly found that Johnson had made no request for counsel, and denied the motion. The defendant now advances two arguments under this assignment of error.

The defendant's first argument is that the principle in *Miranda* v. *Arizona,* 384 U. S. 436, decided subsequent to the trial and subsequent to the hearing on the motion for a new trial, should be given retroactive application. The argument is disposed of, adversely to the defendant, by our recent decisions to the contrary. See *Commonwealth* v. *Morrissey,* 351 Mass. 505, 509–511; *Commonwealth* v. *McCambridge,* 351 Mass. 516, 520–521; *Commonwealth* v. *Rogers,* 351 Mass. 522, 530–531; *Commonwealth* v. *McGrath,* 351 Mass. 534, 539; *Commonwealth* v. *O'Toole,* 351 Mass. 627, 630.

The defendant's second argument is that the judge failed to consider important factors on the question of voluntariness which would call for a determination that Johnson's statement was involuntary. These include the failure to warn Johnson of his rights, the mentality of the accused, and Johnson's physical condition at the time he gave his statement to the police. The factors which the defendant now points to could have been raised at the trial. It was incumbent upon the defendant to do so. The failure to raise them during the voir dire, coupled with the fact that the issue of voluntariness was not thereafter pursued at the trial, leads us to conclude that there was no error. *Commonwealth* v. *Doyle,* 323 Mass. 633, 638. *Commonwealth* v. *Fancy,* 349 Mass. 196, 206.

We note further, however, that the factors to which the defendant now points as bearing upon the voluntariness of Johnson's statement were considered and passed upon by the judge during the hearing on the motion for a new trial. In addition to the evidence introduced, the judge had full opportunity to observe Johnson's mental capabilities. He was also aware of Johnson's physical condition at the time the statement was given to the police. The judge's extensive findings of fact show that he was not required, as matter of law, to conclude that the statement was involuntarily

given. See *Commonwealth* v. *Lundin,* 326 Mass. 551, 555;
*Commonwealth* v. *Beaulieu,* 333 Mass. 640, 653–654; *Commonwealth* v. *Valcourt,* 333 Mass. 706, 711; *Commonwealth*
v. *Harrison,* 342 Mass. 279, 284–285; *Commonwealth* v.
*Tracy,* 349 Mass. 87. The question was one of fact. The
denial of the motion for a new trial shows that the judge
was unpersuaded by the new evidence concerning voluntariness and left undisturbed his finding at the voir dire that
Johnson's statement was "freely and competently" given.

2. Assignment 3 is based upon Johnson's exception to
the question asked of one Gannon regarding the identity of
the gunman in the store. Gannon had testified that he was
a customer in the store when the man, whose face was
partly concealed by a dark blue bandanna handkerchief,
"rushed through the store," gun in one hand, bag in the
other, and demanded money of Berman; that the man struck
Berman on the head with the gun and ordered Gannon to
lie on the floor. Gannon also described the build and appearance and apparel worn by a man whom he had seen
outside the store just before Gannon entered the store.
During a rapid series of questions, objections, rulings and
comments by court and counsel relating to whether the gunman was the same man, Gannon was asked by the judge,
"Can you say that you saw the same man?" Gannon answered, "I cannot say it was the same man." Later in his
testimony Gannon testified that he had identified Johnson
in a police lineup as the man he saw in the store. Toward
the close of his testimony on direct examination Gannon
was asked: "[W]as the man that you saw outside the store
or on the sidewalk a few doors from the liquor store, to the
best of your knowledge, belief and recollection, the man that
you saw rush by you in the store and approach Mr. Berman
and do what you described?" Over objection and exception, Gannon answered, "Yes." The defendant argues
that the question was objectionable as a "leading and catchall question." The question was within the wide discretion which as matter of practical necessity we have recognized must be left to the trial judge, *Guiffre* v. *Carapezza,*
298 Mass. 458, 460, *Commonwealth* v. *Simpson,* 300 Mass. 45,

51, *Commonwealth* v. *Sheppard,* 313 Mass. 590, 597, who should not be fettered by a set of inflexible rules in getting competent testimony to the jury. The witness's reply to the question earlier put by the judge could have been construed by the judge as an implied expression of unwillingness to swear as matter of absolute and ultimate truth that the man seen inside and the man seen outside the store were one and the same. The question propounded by the prosecutor restored the inquiry on the issue of identity to its proper evidential perspective.

We see no merit whatever in assignment 5 which is based on Johnson's exceptions to brief testimony relative to the place where Officer O'Leary fell, the posture of his body, the surgical efforts to save his life and the course of the bullets through his body. It was incumbent upon the Commonwealth to prove that the officer died as the result of a gunshot wound caused by a bullet from a weapon fired by Johnson. The testimony objected to provided important links in the prosecution's chain of proof and was properly admitted.

In support of the indictment charging robbery the Commonwealth introduced evidence through the testimony of an automobile salesman (assignments 8, 9, 10). The salesman had three conversations with Johnson, two on July 31, 1963, and one on August 1, 1963, regarding the purchase by Johnson of an automobile for $1,695. On July 31 Johnson said he would turn in his 1955 Buick, together with an amount of cash to make a total down payment of $300. He stated then that he had "no visible means of support." He gave the salesman a credit statement. On August 1, 1963, the salesman informed Johnson that the finance company wanted a larger down payment. Johnson replied "that he was getting more money that night," that "he would have a substantial amount" of money, and would "be in [to the agency] on the following day and settle up on the automobile." There was no error in admitting this evidence, which tended to establish a motive for the crime. Although motive is not an essential element of a crime, and proof of it is not required, evidence tending to show motive

is always competent because, if clearly shown, it may help
to confirm the conclusion reached from all the other evi-
dence that the defendant is guilty of the crime charged.
*Commonwealth* v. *Simpson,* 300 Mass. 45, 56.

The remaining assignment of error (14) argued by John-
son is that he should be granted a new trial separate from
that of Graves because of the prejudicial effect of the ad-
mission of Graves' statement, amounting to a confession, in
evidence. Johnson was given and exercised the oppor-
tunity before trial to examine the statement incriminating
him which Graves had given to the police. He made no
motion that the trial be severed from that of Graves. He
took no exception to the admission of Graves' statement in
evidence at the trial. The judge correctly instructed the
jury of the limited effect of the statement (*Commonwealth*
v. *Millen,* 289 Mass. 441).

## GRAVES' ASSIGNMENTS OF ERROR.

There was no error in leaving to the jury the question
whether Graves was guilty of murder in the first degree
(assignment 4). It is conceded in Graves' brief that he
was engaged with Johnson in the joint enterprise to com-
mit armed robbery, that Graves drove the getaway car
from the scene of the robbery to the point where Officer
O'Leary, while in fresh pursuit of Johnson, was killed.
Graves argues, however, that before the killing he had
"completely 'detached'" himself from the enterprise by
submitting to arrest at the order of Officer O'Leary. The
issue was one of fact as to which the judge gave full and
correct instructions to which no exceptions were taken.
See *Commonwealth* v. *Green,* 302 Mass. 547, 554–555; *Com-
monwealth* v. *Lussier,* 333 Mass. 83, 90; *Commonwealth* v.
*Dellelo,* 349 Mass. 525, 529–531.

Graves' assignments of error 5 (no severance of trials)
and 6 (admission of Johnson's confession) are disposed of
by applying to them what we have said regarding the cor-
responding contentions of Johnson in his assignment of
error 14.

*Judgments affirmed.*