COMMONWEALTH *vs.* ROBERT BRITT.

Suffolk. February 3, 1971. — March 2, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, SPIEGEL, & BRAUCHER, JJ.

*Homicide. Evidence,* Admissions and confessions, Evidence "binding" a witness.

Conviction of a defendant of murder in the second degree was warranted by evidence that about an hour after a quarrel in an apartment, during which the victim had cut the defendant with a straight razor, the defendant and a companion, with a gun, returned to the apartment in a joint effort to harm the victim, that a woman living in the apartment saw the defendant and his companion when they returned there, and that a shot which killed the victim was fired soon thereafter. [769]

At the trial in the Superior Court of a defendant for murder by shooting, where the testimony of a witness for the Commonwealth on direct examination indicated that she did not fire the lethal shot, and on cross-examination she conceded that in a municipal court she had pleaded guilty and confessed to doing the shooting, and on redirect examination she testified that before appearing in the municipal court she had consumed "over a pint" of liquor, it was held that the witness was not bound by her alleged "confession" in the municipal court and that the jury could conclude that her testimony there was false or given while she was drunk. [770]

INDICTMENT found and returned in the Superior Court on June 6, 1969.

The case was tried before *Roy,* J.

*Louis Goldstein* for the defendant.

*Robert Snider,* Assistant District Attorney, for the Commonwealth.

CUTTER, J. Britt was indicted for the first degree murder of Carl Carrethers. A jury returned a verdict of guilty to so much of the indictment as charged murder in the second degree. Britt (in his appeal under G. L. c. 278, §§ 33A–33G) assigns as error the denial of motions for a directed verdict of not guilty. In this connection, he argues one point of evidence issue, discussed (with a statement of the pertinent facts) in part 2 of this opinion.

A principal witness against Britt was Mrs. Leona Smith. She lived with Carrethers and Edward Sims at a Roxbury apartment. She formerly "used to go out with" Earl Clark and in fact had "lived with him." Her testimony and that of other witnesses would have warranted the following findings.

On February 22, 1969, in the late afternoon, Clark and Britt came to the apartment. Carrethers and Mrs. Smith were in a back bedroom, which Clark and Britt entered. A quarrel arose between Carrethers and Britt. Carrethers knocked Britt down and cut him on the face with a straight razor. Clark drew a knife and was "standing over" Carrethers. Mrs. Smith took the knife and called Sims. He appeared, armed with a piece of pipe. Clark and Britt left the apartment, Clark saying he would be back.

About an hour later, Mrs. Smith admitted one Roosevelt Price to the apartment. As she opened the door she saw Britt and Clark standing in the hallway. Clark was carrying a .22 caliber rifle with a very short barrel. She had seen Clark with this rifle on a prior occasion. Britt, wearing a light coat, had his hand in his pocket. Clark told Mrs. Smith to "[t]ell that so and so to come out." She refused Britt said, "We will get him." Mrs. Smith then closed the door, put on her coat, and went across the street to call the police. As she returned, after two or three minutes at the house of one Jones who "didn't have his phone on," Sims called to her from the living room window. She then proceeded to a service station near by to call the police. As she did so, she saw Britt and Clark in an alley near her apartment, close to the window. She started running to the service station. There a police officer picked her up and returned with her to the apartment.

Sims, Price, and Grace Jackson (a friend of Mrs. Smith) testified that, when Price arrived, Carrethers, Price, and Grace Jackson gathered in Sims's bedroom. There was conflicting testimony concerning whether Carrethers once or twice turned on a light which Sims had extinguished. Carrethers walked toward the window. Sims heard a sound like a gun and saw Carrethers drop to the floor. There was a hole in the window which had not been there before the shot. Sims then shouted to Mrs. Smith from a window, as already described. Price left the apartment and saw Mrs. Smith crossing the street and near the window on the street.

1. The evidence summarized above warranted the jury in concluding that Britt and Clark, with a gun, returned to the apartment, an hour after the late afternoon quarrel, in a joint effort (Britt had told Mrs. Smith, "We will get him") to harm Carrethers. Mrs. Smith had seen Britt and Clark when she admitted Price to the apartment. The shot took place soon thereafter. It could be concluded that either Britt or Clark did the shooting, and that, even if Clark did the shooting, Britt was present aiding and abetting Clark. *Commonwealth* v. *Knapp*, 9 Pick. 496, 516–518. *Common-*

*wealth* v. *Locke*, 335 Mass. 106, 111. The jury were not bound to believe that Britt was a mere bystander. Cf. *Commonwealth* v. *Perry*, 357 Mass. 149, 151–152. Cf. also *Commonwealth* v. *Fancy*, 349 Mass. 196, 200.

2. Mrs. Smith, on cross-examination, conceded that in the Municipal Court of the Roxbury District, on May 16, 1969, she had pleaded guilty and confessed to doing the shooting and said, "I stole the gun" and "I did the shooting." Nevertheless, at Britt's Superior Court trial she adhered to her direct testimony. On redirect examination, she testified that before appearing in the Roxbury court, she had consumed "over a pint" of liquor.

The trial judge admitted this testimony concerning her alleged "confession" in the Roxbury court. It was for the jury to weigh her Roxbury testimony as testimony inconsistent with her direct testimony at trial.[1] The jury could conclude that her prior inconsistent statements were false or made while drunk.[2]

3. In accordance with our duty under G. L. c. 278, § 33E (as amended through St. 1962, c. 453), the whole record has been examined. We perceive no reason in justice for disturbing the judgment under the authority given to us by that section.

*Judgment affirmed.* ·

---

[1] The defendant suggests that Mrs. Smith was "bound" by her Roxbury testimonial admissions. Even if those admissions had related to her state of mind or thoughts, civil cases, treating such testimony as in some degree binding, are not relevant where Mrs. Smith is not a party to a civil proceeding. See *McCarthy* v. *Simon*, 247 Mass. 514, 519; *Laffey* v. *Mullen*, 275 Mass. 277, 278–279; *O'Brien* v. *Harvard Restaurant & Liquor Co. Inc.* 310 Mass. 491, 493; *Reynolds* v. *Sullivan*, 330 Mass. 549, 552 (in which the scope of "binding" testimony was greatly restricted); *Harmon* v. *Hayes-Bickford Lunch Sys. Inc.* 336 Mass. 268, 273. That these earlier statements might have been introduced against Mrs. Smith in a prosecution of her for killing Carrethers is immaterial. Even in a prosecution of her, she could have challenged the truth of her Roxbury testimony and contended that it was not voluntary (cf. *Commonwealth* v. *Johnson*, 352 Mass. 311, 316–317) or that it was made when she was so drunk as to make it unreliable. Cf. *Commonwealth* v. *Chapman*, 345 Mass. 251, 254.

[2] Mrs. Smith's testimony at the Superior Court trial in general was consistent with the testimony of other witnesses to the same events.