COMMONWEALTH
vs.
Ronald DIGNARD

Crim. A. Nos. 76387, 76389, 76589

COMMONWEALTH
vs.
Margaret DIGNARD

Crim. A. Nos. 76388, 76390, 76590

Superior Court Department
Trial Court of the
Commonwealth of Massachusetts

January 8, 1981

Calvin Carr (Asst. Dist. Att.) for the plaintiff.
Walter Palmer for the defendants.

## MEMORANDUM OF DECISION RE MOTIONS

Defendants have filed various motions: to sever (or for relief from joinder), for required findings of not guilty (at the close of the Commonwealth's case, close of all evidence, and after verdict) on several grounds, and for stay of sentence.

The cases involve in a most general way a charge of abuse of the defendants' two children, Ronald, Jr., about 22 months old during the period May 18 through July 6, 1980, and Marie during the period from her birth on July 6, 1980 through August 4, 1980.

The mother, Margaret, was found guilty of assault and battery of Ronald, Jr. during the period mentioned (No. 76390), but not guilty by reason of insanity of the mayhem of Ronald, Jr. (No. 76388) and the assault and battery of Marie (No. 76590). The father, Ronald, was found guilty of the mayhem of Ronald, Jr. (No. 76389), but not guilty of the assault and battery of both Ronald, Jr. (No. 76387) and Marie (No. 76589). The answer to a special question propounded to the jury after the general verdicts indicated that the mother, Margaret, was found guilty only for her own acts but the father, Ronald, as a joint venturer.

## Was Severance Required?

"A motion for severance is in the discretion of the trial judge, unless severance is required by constitutional principles." Commonwealth v. McGrath, 358 Mass. 314, 321 (1970).

Severance is not required where several offenses could have been joined in one indictment and proved by the same evidence or the evidence is connected with a single line of conduct, or is essentially one transaction. Mass. R. Crim. P. 9(a)(2); Smith, Criminal Practice & Procedures, 30 Mass. Practice Series, sec. 1025 (1970); Commonwealth v. Maloney, 348 Mass. 610, 613-614 (1965); Commonwealth v. Veal, 362 Mass. 877 (1972); Commonwealth v. Doyle, 5 Mass. App. Ct. 544, 547 (1977), 364 N.E.2d 1283; Commonwealth v. Cruz, 373 Mass. 676, 690-691 (1977), 369 N.E.2d 996.

The principal risk of trying separate charges together is that the evidence in one will spill over to the other and that, while the evidence would not be sufficient to prove either beyond a reasonable doubt, the aggregate causes the jury to find a defendant guilty of all. The risk is greatest where thin evidence of an earlier act may be carried forward to be added to a later one.

The Court charged particularly that the jurors should consider each indictment as if it were the only one before them and not trade off one against the other. The verdicts found neither defendant guilty on the indictments charging assault and battery of Marie. The time period involved in the allegations concerning Marie was after that involving the allegations about Ronald, Jr. The injury to Marie, a fracture of the humerus, almost certainly resulted from a single event. It seems to the Court, consequently, extremely unlikely that the jury would have related evidence concerning Marie back earlier in time to the events involving Ronald, Jr.

## Reasonable Inferences or Speculations?
## Verdicts Consistent or Inconsistent?

Defendants argue that the evidence was insufficient for the jury to draw reasonable inferences adverse to defendants and that the guilty verdicts were the result solely of speculation and conjecture. They also argue inconsistencies in the verdicts that cannot be reconciled. The Court does not agree with these contentions and concludes that the verdicts show careful analysis and discrimination.

After guilty findings, in connection with motions for required findings of not guilty, the Court must view the case most favorably to the Commonwealth, resolving all conflicts and drawing all reasonable inferences in favor of the Commonwealth, indulging, if necessary, in exegesis. Gallick v. Baltimore & Ohio R. Co., 372 U.S. 108, 119 (1963); Commonwealth v. Lattimore, 1979 Mass. Adv. Sh. 2043, 2050.

The test for a required finding of not guilty pursuant to Mass. R. Crim. P. 25 and G.L. c. 278, §11 as enunciated in Commonwealth v. Lattimore, 1979 Mass. Adv. Sh. 2043, 2050, 393 N.E.2d 370 (1979), is whether the evidence, when viewed in the light most favorable to the Commonwealth, is legally insufficient, if all the circumstances, including inferences that are not too remote according to the usual course of events, are of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of guilt beyond a reasonable doubt. Inferences "according to the usual course of events" can hardly contemplate normal law-abiding behavior as they would never be possible in a criminal case. In some cases, such as this, the facts are so abhorrent as to make it difficult, but possible, for jurors to comprehend how defendants can do such things.

What is a reasonable inference, within very broad bounds, is itself a question of fact for the jury, cf., Commonwealth v. Webster, 59 Mass. 295, 310-312 (1850), particularly at 311.

Our Court has repeatedly held that for inferences to be drawn by juries they need not be inescapable or necessary but only not too remote, Commonwealth v. Obrien, 305 Mass. 393, 400 (1940), and sufficient for a rational jury to find each element beyond a reasonable doubt, Commonwealth v. Cobb, 1980 Mass. Adv. Sh. 59, 71-72, 405 N.E.2d 97.

The jury took considerable time in deciding this case and asked several penetrating

and intelligent questions.

Applying exegesis, and bearing in mind the principle that "[W]here there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way," A&G Stevedores v. Ellerman Lines, 369 U.S. 355, 364 (1962), the Court concludes that the verdicts are reconcilable.

There was considerable evidence on which the jury could conclude that both defendants exhibited consciousness of guilt including evading examinations of young Ronald, giving incredible explanations for his series of injuries (particularly stating that he did not cry when scalded with hot water which caused second-degree burns), falsely claiming that medical attention had been given, the father claiming he was working nights for Metropolitan Security Co. at the relevant time.

While consciousness of guilt alone is insufficient to support guilty findings, not much more is required, especially when the defendants had the opportunity to commit the offenses. Commonwealth v. Montecalvo, 367 Mass. 46, 55 (1975); Commonwealth v. Eppich, 342 Mass. 487, 492 (1961); Commonwealth v. Miller, 297 Mass. 285, 286 (1937).

### 1. Margaret

the evidence would support an inference that the mother was the principal custodian of young Ronald and was always with him. Her presence at the relevant times was a permissible inference. There was a great deal of medical evidence that the children were abused.

Commonwealth v. Labbe, 1978 Mass. App. Ct. Adv. Sh. 141, 145, 373 N.E.2d 227 permits qualified doctors to testify to a diagnosis of child abuse and permits evidence of multiple injuries to a child over time to show someone in a custodial relationship bore the child ill will.

The defendants did not complain about the fact that the indictments against the defendants spanned several weeks. No motion for a bill of particulars or specifications was filed. Commonwealth v. Whitehead, 1980 Mass. Adv. Sh. 257, 265; Commonwealth v. Bessette, 345 Mass. 358, 360 (1963); Persampieri v. Commonwealth, 343 Mass. 19, 22 (1961). Defendants were apparently willing to defend over this period.

The verdicts against the mother, Margaret, are reconcilable. the jury could have concluded that while she suffered from a mental disease or defect and lacked substantial capacity to appreciate the wrongfulness of her acts or the ability to conform her behavior to the law with respect to the mayhem and the single brutal and serious injury to a female infant less than a month old, she was able to so appreciate and so conform with respect to the multiple bruising of the older male child over a period of several weeks.

The verdict of not guilty by reason of insanity with respect to the allegations of mayhem of the older male child can also be reconciled on the reasonable conclusion that her mental state did not permit her to form the specific intent to maim or disfigure, an essential element of the crime. See, Commonwealth v. Hogan, 1979 Mass. Adv. Sh. 2453, 2456, 369 N.E. 2d 978.

An alternative reasonable reconciliation is that she lacked responsibility at one time (mayhem of Ronald, Jr. and assault and battery of Marie) but not at another time (assault and battery of Ronald, Jr.). The allegations with respect to Marie were for the period July 6 through August 4, 1980, a later period then that respecting Ronald, Jr. With respect to Ronald, Jr., the evidence would support a finding that the bruises (inferentially caused by several assaults and batteries) dated from as early as June 1 (two weeks before June 14, Dr. Bithoney; 10 days before June 10, Dr. Newberger) whereas the mayhem (scalding and burning) occurred on June 7. Ronald Dignard's parents testified that they did not observe the burns and scald of Ronald, Jr.'s feet when they visited on Saturday, June 7, but saw him in that condition on Sunday, June 8. This evidence could have been given considerable weight since it was against the interests of their son. How much weight to ascribe to any particular piece of evidence is of course a question for the jury. Commonwealth v. Montecalvo, 367 Mass. 46,

56 (1975).

In several cases convictions were upheld where the conviction on one charge and acquittal on another seemed less reconcilable then in the present case. **Commonwealth v. White**, 363 Mass. 682, 684 (1973); **Commonwealth v. Scott**, 355 Mass. 471, 475 (1969); **Commonwealth v. Johnson**, 1979 Mass. App. Ct. Adv. Sh. 385, 389, n.3; **Commonwealth v. McCombe**, 5 Mass. App. 842, 843 (1977).

The jury could reasonably have concluded beyond a reasonable doubt that the bruises were inflicted by the person shown always to have been in his presence, with the greatest opportunity, his mother and principal custodian, the defendant Margaret.

## 2. Ronald

The single guilty verdict returned against defendant Ronald was for mayhem of Ronald, Jr. with respect to which defendant Margaret was found not guilty by reason of insanity. The jurors' answer to the special question indicated that Margaret was the principal and Ronald a joint venturer, encouraging, aiding or ready to aid, known to Margaret, and having the requisite specific intent. The answer consequently removed from the case the somewhat questionable theory which the Court had submitted to the jury, aptly labeled by Margaret's counsel the "reciprocal unknown principal theory of joint venture" (i.e. that the jury need not find which was the principal actor, if convinced one was and the other was a joint venturer).

Ronald argues that the verdict was nothing but speculation. The Court believes it to be within the bounds of reasonable inference. Ronald stated that Ronald, Jr. was scalded while bathing with him. The jury can accept part of a defendant's statement and reject the rest. **Commonwealth v. Campbell**, 1978 Mass. Adv. Sh. 1387, 1393; **Commonwealth v. Noxon**, 319 Mass. 495, 547-548 (1946). The jury could infer, particularly from the testimony of Ronald's parents, that the incident occurred on Saturday night, June 7. It is common knowledge that Saturday is the traditional bath night. It is a reasonable inference that a mother, as the principal custodian of her young son,

would be engaged in bathing him. The jury could infer that Margaret scalded the boy (lacking responsibility) and that Ronald was indeed present in the tub encouraging, aiding or ready so to do.

It is also possible that the jury reasonably concluded that Ronald, joining with his wife in concocting the incredible story that the child did not cry out when scalded, was exhibiting guilty consciousness that he was present and failed to prevent his wife's so injuring their child, reasonably leading her to believe that he shared her intent. For if the jury had found that Ronald was present while his son was being severely scalded and yet did nothing to prevent this deliberate injury, it would surely not be unreasonable for them to conclude that Ronald was more than a mere onlooker. The jury may well have inferred that throughout the incident Ronald knew what Margaret was doing, was in a position to aid her and would have aided her had it been necessary, encouraged her by his presence to do the act, and intended that his son be so injured. **Commonwealth v. Soares**, 1979 Mass. Adv. Sh. 593, 605-607; **Commonwealth v. Cook**, 1980 Mass. App. Ct. Adv. Sh. 1961, 411 N.E.2d 1326.

The jury, of course, are permitted to infer that a defendant intended the natural and probable consequences of his acts.

Failing to act, where there is a duty so to do, can be considered the equivalent of affirmative action.

## Was the Special Question proper?

Defendants argue that the Court lacked the power to propound the special question after the return of the general verdicts and that putting the question improperly probed the jurors' thinking.

Massachusetts Rule of Criminal Procedure 27(c) gives the trial judge discretion to submit special questions to the jury. Special questions are appropriate when a simple answer can eliminate and simplify what could otherwise be very complex factual and legal problems. In **Commonwealth v. Golston**, 373 Mass. 249, 260, 366 N.E.2d 744 at 752, the Court stated "there was no error in the submission of special questions to the jury to serve as an aid to this Court,

Commonwealth v. Beneficial Finance Company, 360 Mass. 188, 299-300 (1971) . . ." I believe that the appellate courts will be grateful at having been relieved of the necessity of grappling with this Court's "reciprocal unknown principal theory of joint venture." In **Beneficial Finance** the Court approved special questions as supplementary to a general verdict where helpful on appeal, citing **United States v. Spock,** 416 F.2d 165, 182, n.4, where Judge Aldrich indicated such procedure might be essential to decision on sentencing. I considered the answer to the special question controlling with respect to staying sentence. See, cf., **United States V. Frezzo,** 602 F.2d 1123 (C.A. Pa. 1979).

The single question hardly ran afoul of the prohbition of leading ajury step by step to a guilty verdict. They had already returned the general verdict, so the answer to the special question was "supplementary" in the full sense of the word.

The answer came back in a few minutes, so it clearly did not disturb the jury, rather permits the inference that they had already answered the question in their earlier deliberations.

### Joint Venturer Where Principal Has Personal Disability?

Ronald also argued that since Margaret was not guilty by reason of insanity of the mayhem, he cannot be guilty as a joint venturer, arguing that many of the joint venture cases require that the jury find that someone was a principal, i.e., guilty of all the required elements of the crime.

At early common law an accessory could not be convicted without the prior conviction of the principal. **Standefer v. United States,** 48 USLW 4634, U.S. , 100 S. Ct. 1999, 2003, 64 L.Ed.2d 689 (1980). This rule has been modified in most jurisdictions, including Massachusetts. G.L. c. 274, § 3; **Standefer, supra,** 100 S.Ct. at 20004; the present rule in the Commonwealth is that an accessory may be convicted whether or not the principal has been tried and convicted. G.L. c. 274, § 3; **Commonwealth v. DiStasio,** 298 Mass. 562, 565 (1937).

Nonetheless, many jurisdictions still bar acquittal of the principal and conviction of the accessory in a single trial. The policy behind the rule is to prevent internal inconsistencies in a verdict. W. LeFave & A. Scott, **Criminal Law,** § 63 at 501 (1972). In determining whether the verdict is internally inconsistent a key factor is the reason for the acquittal of the principal. Thus, it would be inconsistent to convict an accessory when the activity performed by the principal proved not to be criminal, **Shuttleworth v. City of Birmingham,** 373 U.S. 262, 265 (1963); or when the evidence was insufficient to prove the actual commission of the substantive offense by the principal, **Giragosian v. United States,** 349 F.2d 166, 168 (1st Cir. 1965).

In the present case, however, the jury found that the principal did in fact perform the criminal act, although she lacked the requisite intent by reason of insanity. It is not inconsistent to find that Ronald intentionally aided her in this endeavor. "Even when the principal and the aider and abettor are tried together, whether by judge or jury, a conviction of the aider and abettor may be sustained even if the fact finder concludes that the principal lacked the requisite intent to commit the substantive crime, provided that the act constituting the crime has itself been completed." **United States v. Standefer,** 610 F.2d 1076, 1087 (3rd Cir. 1979), affirmed, **Standefer v. United States,** 48 USLW 4634, U.S. , 100 S.Ct. 1999, 64 L.E.2d 689 (1980).

The Supreme Judicial Court has on several occasions upheld the conviction of an accessory after a trial in which the principal could not be identified with any precisin. **Commonwealth v. Casale,** 1980 Mass. Adv. Sh. 1711, 1718-19; **Commonwealth v. Ferguson,** 365 Mass. 1, 7 (1974); **Commonwealth v. Britt,** 358 Mass. 767, 769 (1971).

The specific issue before the Court was directly addressed in **Commonwealth v. McGrath,** 358 Mass. 314 (1970). In that case the defendant and another individual were tried together and convicted of first degree murder. The defendant argued on appeal that if the other individual had fired the fatal shots and was insane the defendant would also have to be acquitted. The Court

136

held that the defendant's argument was "without merit either in law of reason. . . . The insanity of one defendant may not serve as the shield for the acts of a responsible person." Id. at 321.

No good reason suggests itself why a joint venturer should be shielded by a personal disability of the principal. Such a rule might encourage exploitation of the insane by a modern Fagan.

All that is required is participation to some extent. **Commonwealth v. Michel**, 367 Mass. 454, 457, 327 N.E.2d 720 (1975). The specific intent can be shown by intent to do some serious injury. **Commonwealth v. Hogan**, 1979 Mass. Adv. Sh. 2453, 2455, 396 N.E.2d 978.

### Should Sentence be Stayed?

Massachusetts Rule of Criminal Procedure 31(a) empowers the Court to stay execution of a sentence pending appeal and to impose terms. In **Commonwealth v. Levin**, 1979 Mass. App. Ct. Adv. Sh. 857, 870, 388 N.E.2d 1027, and in **Commonwealth v. Allen**, 1979 Mass. Adv. 1819, 1829-31, 385 N.E.2d 532, 392 N.E.2d 1027, trial courts were encouraged to stay sentence where defendant has a reasonable possibility of success on appeal, the chances were good. In **Commonwealth v. Hodge**, 1980 Mass. Adv. Sh. 1445, 1449, 406 N.E.2d 1010, reasonable possibility of success appeared to be the test. The trial court was permitted to consider the likelihood of flight by the defendants if at liberty, danger to others, further criminal activity, family status, roots in the community, criminal record, general attitude and demeanor.

While the undersigned had reservations about the "reciprocal unknown principal theory of joint venture," that theory seems to have been removed from the case by the answer to the special question.

While the denial of every motion for a stay of sentence must appear to demonstrate supreme confidence, and lack of humility on the part of the trial judge, it appears to me that defendants are not likely to succeed on an appeal, that their chances are not good. Also, Margaret's attorney's affidavit, filed the day of sentencing, December 30, 1980, indicated both defend-

ants had plans to leave for Florida at a time they knew that charges were likely to be brought against them. Margaret's father lives in Oklahoma, attended the trial, has supported her financially in the past, and, I infer, would be willing to advance money for at least her, if not both defendants, to leave Massachusetts. I consequently am of the opinion that staying sentence would create a risk of flight.

### DECISION

Consequently, all of defendants' motions are DENIED.

Robert J. Hallisey
Justice of the Superior Court