Welsh, P.J.
This is a complaint seeking judicial review of a decision of the Brookline Rent Control Board denying the plaintiff landlord a certificate of eviction. The proceedings before the Board subject to the present review resulted from a decision and order of this Appellate Division annulling the decision of the Board and remanding the cause to the Board for additional findings of fact on whether the landlord’s purpose in seeking permission to evict was .inconsistent with the provisions and purposes of the rent control by-law, and “for further proceedings consistent with [the] opinion.” Kahn v. Brookline Rent Control Board, 1982 Mass. App. Div. 111, 114.
The Board failed an answer essentially stating that its decision was amply suppdrted by the evidence contained in the record. The trial court ordered the record in the prior proceedings consolidated with the present action for *52 the purposes of review.
In April 1980, the landlord applied to the Board for a certificate of eviction on the grounds that the tenant was consistently and chronically late with his rent payments. The Board issued an order denying the certificate of eviction. Upon initial review in the Brookline Division, the action and order of the Board was affirmed. Upon further appellate review, this Appellate Division reversed and remanded the cause to the Board for additional findings of fact on the issue of whether the landlord’s purpose in seeking the eviction was consistent with the provisions and purposes of the Rent Control By-law. Reference is made to the earlier Kahn decision for the procedural history prior to 1980.7<£ at 112-113.
After remand, the Board held further hearings. The landlord chose to rely upon the record in the prior proceedings and introduced no additional evidence. The landlord objected vociferously to the introduction of additional evidence by the tenant, contending that the admission of such evidence was not authorized by the Order and Decision of the Appellate Division and thus constituted an impermissible broadening of the scope of the hearing beyond the authority of the Board. The Board made further findings and conclusions which are part of the record. Essentially, the Board found that the filing of the application for the certificate of eviction by the landlord was primarily motivated by his desire to obtain possession of the tenant’s unit when it became apparent that neither the tenant nor his friend would purchase the unit, and not by chronic and consistent late payments of rent. The Board further found that although chronic and consistent late payments of rent over an extended period of time is a just cause for the issuance of a certificate of eviction under § 9(a) (10) of Article XXXVIII of the By-law, that just cause which exists is in conflict with the provisions and purposes of the Rent Control By-law, because the landlord’s objective in seeking eviction bore a relationship to the condominium conversion.
The Justice in the Brookline Division, upon review of the Board’s action and decision agreeable to General Laws Chapter 30A and Article XXXVUI of the By-law, affirmed the decision of the board, concluding that the taking of additional evidence was permissible within the scope of the remand of the Appellate Division and that the board’s finding that notwithstanding the landlord’s establishment of grounds for a certificate of eviction under the“other just cause” provision of the By-law, he is not entitled to the certificate because his purpose in evicting “is related” to condominium conversion[3] was supported by substantial evidence.
1. The trial judge correctly determined that the taking of additional evidence was within the scope of the remand order. There was nothing in the order which prohibited the Board from taking additional evidence. The order simply directed the Board to make certain additional findings of fact on the issues indicated in the opinion. As such, the Board was free to take such additional evidence as it deemed necessary or appropriate to arrive at the findings sought in the remand order. F. T. C. v. Colgate-Palmolive Co., 380 U.S. 374, 379 (1965); See Martineau v. Director, Division of Employment Security, 329 Mass. 44, 50-51 (1952). The Board was not required to take additional evidence. See Travelers Indemnity Co. v. Commissioner of Insurance, 362 Mass. 301, 305 (1972). While it may have been preferable to have included in the remand order an express grant of permission to the *53 Board to receive additional evidence,[4] the failure to do so did not limit the Board’s discretion to allow further evidence.
2. Does the Board’s finding of the existence of “just cause” in the form of chronic and consistent late payments of rent mandate the issuance of a certificate of eviction, or, as the reviewing judge in the Brookline Division ruled, did the co-existing motive of obtaining the unit for the purpose of its sale as a condominium predominate so as to entitle the Board to declare that the granting of a certificate of eviction was inconsistent with the purposes and provisions of the Rent Control By-Law? A related question is whether there was substantial evidence in the record sustaining the Board’s finding that the certificate of eviction sought here could not properly be granted as the landlord’s motive was inconsistent with the purposes and provisions of the Rent Control By-law. Is mere covetousness of the unit for purposes of sale enough, or must it be coupled with some evidence of a predatory design?
Relying upon the case of Decker v. Boston Rent Board, 13 Mass. App. Ct. 907 (1982), the reviewing judge ruled that a party seeking to evict may have licit and illicit purposes co-existing, and that if the primary purpose is illicit, the Board may properly deny the certificate of eviction. In Decker, Chapter 15, §8(a)(viii) of the Ordinances of the City of Boston permitted the issuance of a certificate of eviction where the landlord sought to recover possession of the premises in good faith for his own use and occupancy. In deciding whether or not the landlord had met his burden of proving good faith, the trial court found that although the landlord intended to occupy the premises from which he sought to evict the tenant, this was not his primary purpose. Since his primary purpose was to gain an economic benefit in evicting the tenant, the court reached the conclusion that the landlord had not met his burden of showing good faith. In sustaining the Judge of the Housing Court, the Appeals Court held that the judge was free to reject the reasons for desiring the premises advanced by the landlord. Having done so, his finding that the landlord had failed in his burden of proof on the issue of good faith was not clearly erroneous. Further, the Appeals Court could discern no misapplication of the law from the record which included a transcript of the evidence.
There are some important differences between the Decker case and the case subjudice. First, a claim by a landlord that he wants the premises for his own use byits very nature calls for close scrutiny, especially where the gain of economic benefit from an eviction is evident. Probably for this reason, the Ordinance at issue in the Decker case required the landlord to prove good faith when basing his claim for a certificate of eviction on such grounds. A claim by a landlord for a certificate of eviction based upon chronic and consistent late payment of rent stands on a different footing. The landlord had a legal right to have the rent paid in a timely fashion. Gentile v. Rent Control Board of Somerville, 365 Mass. 343, 347 (1974). Failure to pay the rent in a timely fashion is a matter readily susceptible to verification by recourse to records, documentary evidence and other objective indicia. As we observed in the earlier Kahn decision, the right to receive the rent in a timely fashion was absolute; the landlord was not required to invoke the remedy of eviction as a condition to maintain the right to timely receipt. Kahn v. Brookline Rent Control Board, supra at 113. The existence or non-existence of the grounds rests upon objective and readily ascertainable facts, rather than upon the self-serving expressions of a landlord, that he wants the *54 property for his own use in the face of obvious economic benefit in having the tenant out. The Decker opinion recognized that an eviction ground upon the landlord’s stated desire to obtain possession for his own use would not of itself justify refusing the certificate. Decker, supra, at 907. See Yaffe v. Lappin, 324 Mass. 254, 257 (1949). As we read the Decker case, primary purpose is not in itself the test: It may provide under some circumstances, particularly where the true basis for eviction is shrouded in the realm of the subjective motives or purposes, a focus for analysis to determine the existence of good faith on the part of the landlord.
It is axiomatic that human beings are frequently actuated by a welter of different motives, some laudable and others selfish. When licit purposes coexist with those which are verboten, courts and boards are ill equipped to fathom which motive predominates. Such speculation ought not to be made the basis for administrative (or judicial) decision. Maniscalco v. Director of the Division of Employment Security, 327 Mass. 211, 215-216 (1951). It is external conduct or the threat of such conduct, and not subjective motives or purposes that form the proper basis for regulation by the state through its law[5]. At common law an evil intent and an unlawful act had to concur in order to constitute a crime. Commonwealth v. Mixer, 207 Mass. 141, 142 (1910). In the area of civil remedies, it has been held that the existence of an avaricious or despicable motive does not prevent the exercise of a right or remedy. For example, a holder of a mortgage has the right to foreclose the mortgage that is in default. The fact that the motive was cupidity for the mortgaged property is immaterial. Fleming v. Dane, 304 Mass. 46, 52 (1939). As was stated by the Supreme Judicial Court in Randall v. Hazelton, 94 Mass. (12 Allen) 412 (1866),“The exercise of a right conferred by a valid contract, in the manner provided by its terms cannot be the ground for an action. The law will not inquire into the motives of the party exercising such right however unfriendly or selfish ... "/d. at 415. Applying this principle to the case at bar, failure to pay the rent in a timely fashion is a violation of the contractual relationship between the landlord and the tenant, triggering the right to seek the remedy of eviction. Assuming, arguendo, that the landlord’s purpose or motive was to obtain possession of the unit for resale as a condominium, the existence of such a motive should not, of itself, prevent him from receiving a certificate of eviction so long as the grounds for eviction exist. As we observed in Moulton v. Brookline Rent Control Board, 1981 Mass. App. Div. 8, 11, securing a certificate of eviction is but a first step in what sometimes can be protracted judicial proceedings.
What then is the proper role of the Board once it is satisfied that the facts establish “other just cause” for granting a certificate of eviction? If the existence of an improper motive alone (or if one prefers, where proper and improper motives coexist) is insufficient, what sort of additional evidence of conduct on the part of the landlord would constitute substantial evidence of a design inimical to the objectives of the Rent Control By-law? By way of illustration, such things -as the employment of predatory practices by the landlord, coercion, threats, harassment, conspiracy or retaliation for being active in a tenant’s group or other organization whose objective is to impede the loss of rental housing stock due to creation of condominium type of ownership would constitute activity which would preclude the landlord from *55 getting the certificate. Evidence of treatment of the tenant by the landlord different from that accorded others might permit an influence of unlawful design. It is virtually impossible to catalogue all of the forms of conduct (be they acts or omissions) that would envince an unlawful design. Suffice it to say that the act or omission, whether taken alone or in combination with other acts should tend to prove an unlawful design. The acts or omissions need not be unlawful in themselves but may nonetheless furnish a link in a chain of inferences leading to a design or scheme on the part of the landlord at variance with the purposes and intent of the Rent Control By-law.[6]
3. With these considerations in mind, we now turn to the question of whether or not substantial evidence exists for the Board’s decision. “Substantial evidence” means such evidence as a reasonable mind might accept as adequate to support a conclusion. Boston Edison Co. v. Boston Redevelopment Authority, 374 Mass. 37, 54 (1977). In determining whether or not substantial evidence exists, the entire record must be examined. In making the evaluation whether or not substantial evidence exists, the reviewing court must give due consideration to whatever in the record detracts from the weight of the Board’s decision. Cohen v. Board of Registration in Pharmacy, 350 Mass. 246, 253 (1966). Yet, if there is substantial evidence to support the Board’s factual conclusions, the reviewing court is not entitled to substitute it on view as to the facts, even though it might well have arrived at a different result, Martin v. Director of the Division of Employment Security, 347 Mass. 264, 268 (1964). While we recognize that considerable deference is to be accorded to the Board’s authority to draw inferences in arriving at its determinations as to the effect of conduct, Arthurs v. Board of Registration in Medicine, Mass. Adv. Sh. (1981) 849, 860, this authority is not without limitations. To hold otherwise would render judicial review of the Board’s action a sham and an illusion. While the Board is free to evaluate évidence in the light of its expertise, it may not use its expertise as a substitute for evidence in the record. Id. at 855. Although the Board may reject evidence introduced by the landlord as being unworthy of belief, its disbelief of such evidence would not be the equivalent of proof of facts to the contrary. Maniscalco v. Director of the Division of Employment Security, 327 Mass. 211, 216 (1951).
Without rehearing the prior history at length, there was evidence that all of the units in the particular building in question except that which was occupied by the tenant are nowin private ownership as condominiums under General Laws Chapter 183A. There was further evidence that the landlord wrote a letter to all of the tenants in June of 1978 inviting each of them to negotiate with him to purchase their units. There were conversations between the landlord and tenant relative to a possible purchase of the unit by the tenant or by a friend of the tenant. The landlord had filed an earlier application for a certificate of eviction which he withdrew upon receiving assurances that the rent would be timely paid in the future. The promises were not kept. The negotiations for the purchase of the unit came to naught. The landlord then initiated the present application under the “other just cause” provision by the By-law.
We have carefully reviewed the record. There is no substantial evidence of coercion, threats or improper tactics on the part of the landlord, or other circumstances from which the Board could infer the attempt to perpetuate a *56 scheme to get the tenant to give up his unit by a ruse, force or threat of force. There is no evidence that the landlord harassed the tenant or improperly importuned him with a view towards getting him to purchase his unit. The Board in its findings makes much of the fact that the present application was initiated shortly after it should have become apparent to the landlord that neither the tenant nor his friend were going to buy the unit. Some forebearance on the part of the landlord as to taking action agains the tenant for late rent payments during the period when there was discussion about purchasing the unit was understandable. The purchase of the unit would have ended the problem the landlord experienced as to late payments. It was not necessary that the landlord remind the tenant of his obligation to pay the rent on time at every meeting. Admittedly, there was some evidence from the tenant that he felt “pressured” by the landlord, but there is no substantial evidence of conduct by the landlord calculated to make the tenant feel pressured. The fact that the landlord had some discussions with the tenant’s friend relative to purchase the unit may have evidenced a hope on the part of the landlord that he would be rid of a tenant whom he might have considered a problem, but the harboring of such hopes alone is not a reason to deprive the landlord of a certificate of eviction, in the absence of evidence of a nexus with a court of conduct calculated to defeat or hamper the objectives of the Rent Control By-law.
It is evident that the Board and the reviewing court placed some emphasis on the fact that this was the last rent controlled unit in the building. Standing alone, this circumstance affords no assistance in deciding whether or not a certificate of eviction shall issue. Indeed, this was virtually conceded by counsel for the tenant at oral argument. His argument, as we understand it, is that the Board could have found that the assertion of a spurious ground as a basis for eviction, coupled with the fact that the unit was the “Last of the Mohicans,” would justify the Board’s finding of an improper motive. The short answer is there is no substantial evidence from which the Board could infer the assertion by the landlord of a spurious ground. The history of late payment of rent was well documented. Finally, the fact that the landlord may have talked more frequently to the tenant about the purchase of the unit than about rent payment does not offer substantial evidence of primary motive (if indeed that is the test. Reference is made to Part 2 of this opinion). As we pointed out, the sale of the unit to another would have achieved both goals, i.e., the late payment issue and the disposition of the landlord’s remaining equity interest in the building. Secondly, the fact that more discussion took place about the sale of the unit than late rent payment affords a tenuous basis at best for concluding that one motive predominated. A shrewd negotiator will often emphasize an issue he considers of lesser importance in the hope of gaining concessions on more crucial issues. Finally, it is not unexpected that one in the position of the landlord might choose to downplay that late payment issue while there was some basis for optimism that the unit might be sold. One hopeful of making a sale might well choose to avoid an unpleasant issue that might chill the chances for effecting an agreement. As suggested in the earlier Kahn decision, forbearance by the landlord does not in itself warrant the finding of waiver or of the right to receive the rent in a timely fashion. Kahn, supra, at 113. The fact that such forbearance may have been engendered by the hope of selling the unit does not constitute evidence of a purpose inconsistent with the provision and purposes of the Rent Control By-law.
*57 The Board’s findings are replete with references to the fact that the tenant was prominent in public debates and discussions in the media as a proponent of tenant’s rights vis-a-vis condominium conversions. The Board was careful to point out that it ought not draw any inferences adverse to the landlord from these circumstances. We agree. There was no evidence whatsoever of a nexus between the tenant’s reputation as an articulate, outspoken advocate of tenant’s rights and the landlord’s application for a certificate of eviction.
4. The court made a voluntary report pursuant to Rule 64(c)(4), Dist./Mun. Cts. R. Civ. P. of its action excluding two documents. The documents excluded consisted of two certificates from the Town Clerk of Brookline, and tended to show that a reference to the earlier Kahn decision cited a later version of the By-law which was not in effect at the time of the application. The amended version brought cooperative apartments within the sway of the Rent Control By-law by indicating that the formation of a cooperative housing corporation after January 1,1980 was not to be deemed a just cause for the issuance of a certificate of eviction. Presumably, the court excluded the proffered materials on the grounds that they were not presented to the Board initially for inclusion in the record and could not be accepted by the court at that stage of the proceedings. Although the general rule is that By-laws are not properly judicially noticed, Trustees of Stigmatine Fathers, Inc. v. Secretary of Administration and Finance, 369 Mass. 562, 568 (1976), we recently suggested that the By-law upon which the court’s very jurisdiction to review the Board’s action depends might be judicially noticed on the theory of the court’s inherent authority to take cognizance of its own subject matter jurisdiction. Fisgeyer v. Brookline Rent Control Board, 1983 Mass. App. Div. 357[7] at p. 5-6. See Cohen v. Assessors of Boston, 344 Mass. 268, 269 (1962). Although it would not have been error to admit the documents, the record establishes no abuse of discretion in excluding them. A review contemplates that the record sent up by the Board will be the focus for review. In any case, the contention that the earlier Appellate Division erroneously referred to the later version of the By-law was undoubtedly correct. The following dicta, of the court’s opinion, appearing on Page 114 is inaccurate and should be disregarded:
. . . The by-law anathematizing condominium conversion as a basis for a certificate of eviction is restricted to prospective application in haec verba to condominium conversions after January, 1980. Article XXXVIII §9(9)(10)8 of the by-laws of Brookline . . .
Likewise, footnote 8 in the opinion should be disregarded. It is clear that the exclusion of condominium conversions as a basis for “just cause” for eviction relates back to 1978 and was operative at the time of the present application.
We determine that the decision of the Board is materially affected by an error of law prejudicial to the substantial rights of the plaintiff-appellant, and that the decision of the Board to deny the certificate of eviction is not supported by substantial evidence, and must be annulled. In view of the fact that the plaintiffs application which was originally made in 1980 and is still pending has already been denied twice by the Board, has already received judicial review in the Brookline District Court twice, and is now pending before the Appellate Division for the second time, no useful purpose would be served by a further remand. MacGibbon v. Board of Appeals of Duxbury, 369 Mass. 512, 520 (1976), rehearing denied 369 Mass. 523, 525 (1976). There is no reason to suppose that a further hearing would further enhance the issues or *58 produce a record which might warrant a different result.
The judgment is reversed. A new judgment is to enter in the trial court annulling the decision of the Rent Control Board of Brookline and directing the Board to issue the certificate of eviction within 30 days of the time allowed for claiming an appeal for further appellate review.
So ordered.

The Trial Judge’s Memorandum of Decision is summarized in the 11 M.L.W. 1312, published July 18, 1983.

Holyoke Street Railway v. Department of Public Utilities, 347 Mass. 440, 450 (1965).

While improper motive itself is not an element of a crime, evidence of motive is competent in aid of other evidence supporting the guilt of the defendant. Commonwealth v. Johnson, 352 Mass. 311, 320-321 (1967).

In Heller v. Silverbranch Construction Corp., 376 Mass. 621 (1978), it was recognized that conduct not unlawful in itself could afford a basis for relief under G.L.C. 93A. Id. at 626-626.

Digested in 12 M.L.W. 486, Jan. 9, 1984 (Lawyers Weekly Number El 15.)